Theresa **STIEBERGER**, individually and on behalf of other persons similarly situated; the City of New York, Plaintiffs-Appellees,

v.

Otis R. **BOWEN**, Secretary, United States Department of Health and Human Services; Martha McSteen, Commissioner of the Social Security Administration; Louis B. Hays, Associate Commissioner of Hearings and Appeals and Acting Director, Office of Programs and Policy, Social Security Administration; and Philip T. Brown, Chief Administrative Law Judge, Office of Hearings and Appeals, Social Security Administration, Defendants-Appellants.

No. 769, Docket 85–6310.

United States Court of Appeals, Second Circuit.

Argued Jan. 27, 1986.

Decided Sept. 8, 1986.

**30**

Richard K. Willard, Asst. Atty. Gen., Civil Div., Dept. of Justice, Washington, D.C. (William Kanter, Frank A. Rosenfeld, Deborah Ruth Kant, Civil Div., Dept. of Justice, Washington, D.C., on brief), for defendants-appellants.

Burt Neuborne, American Civil Liberties Union Foundation, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel, Alice Morey, Alexandra S. Bowie, New York City, Ralph Byrd, M.F.Y. Legal Services Inc., New York City, John E. Kirklin, Nancy Morawetz, Legal Aid Soc., New York City, on brief), for plaintiffs-appellees.

Before MESKILL, NEWMAN and KEARSE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal from the issuance of a preliminary injunction against the Secretary of Health and Human Services potentially raises far-reaching issues concerning the proper role of agencies and courts in the implementation of statutes. The issues arise in the context of adjudicating claims for disability benefits. The District Court for the Southern District of New York (Leonard B. Sand, Judge) ruled that the Secretary has violated and will violate the rights of a class of present and future claimants for disability benefits by failing to apply the law of this Circuit concerning the so-called "treating physician rule," the standard for assessing the significance of the medical testimony presented by a claimant's treating physician. The Court issued an injunction barring the Secretary from denying or terminating benefits under policies inconsistent with decisions of this Circuit and granting other relief to implement this prohibition. *Stieberger v. Heckler*, 615 F.Supp. 1315 (S.D.N.Y.1985). After the District Court's decision, another panel of this Court ordered a substantial but less far-reaching remedy on behalf of a class of disability claimants who had complained of the Secretary's failure to observe the treating physician rule. *Schisler v. Heckler*, 787 F.2d 76 (2d Cir.1986). For reasons that follow, we conclude that the *Schisler* remedy has removed, at least for now, the justification for the preliminary injunction issued in this case, and we therefore vacate the injunction.

## Background

Clarification of the issues requires a detailed examination of the proceedings in the District Court. The amended complaint was brought by the plaintiff, Theresa Stieberger, on behalf of herself and a class alleged to consist of all New York residents who have had disability benefits denied or terminated since October 1, 1981, by administrative law judges and who have not had benefits granted or restored in

administrative appeals. The City of New York is also a plaintiff.[1] A class was certified, and later redefined by an order entered December 20, 1985, to include "All New York residents whose claims for benefits or continuation of benefits have been or will be denied or terminated since October 1, 1981, based on a determination that they do not have a disability that prevents them from engaging in substantial gainful activity." The defendants are the Secretary and other Health and Human Services officials, collectively referred to as "the Secretary."

The District Court ruled that jurisdiction under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1982), was proper, that judicial waiver of the exhaustion of remedies requirement was appropriate, that the sixty-day period of section 205(g) was tolled, and that mandamus jurisdiction was available. *See* 615 F.Supp. at 1328–37.

In considering plaintiffs' motion for a preliminary injunction, the District Court initially determined that those future class members whose claims have not yet been resolved in the administrative process face irreparable injury if their claims are denied pursuant to policies they contend are unlawful. Judge Sand therefore proceeded to consider whether a likelihood of success on the merits had been established.

The suit challenges two policies of the Secretary. The first concerns what the District Court concluded was the Secretary's *de facto* policy of non-acquiescence in the law of this Circuit concerning the treating physician rule. The second concerns so-called "Bellmon Review"—a program by which the Secretary, acting pursuant to an amendment to the Social Security Act sponsored by Senator Henry Bellmon,[2] initiates on his own motion review of decisions rendered by administrative law judges on disability claims. The District Court denied plaintiffs' motion for a preliminary injunction with respect to Bellmon

review practices, requiring only that the Secretary provide the Court and the plaintiffs ten days' notice in the event that certain aspects of the Bellmon review program, which have been discontinued, are reimplemented. The defendants have not challenged this grant of limited relief, and the plaintiffs have not cross-appealed to seek broader relief. The Bellmon review issues are therefore not before us at this stage of the litigation.

On the issue of non-acquiescence, the District Court initially noted that the treating physician rule has been clearly articulated in the decisions of this Circuit. *See, e.g., Bluvband v. Heckler,* 730 F.2d 886, 892–93 (2d Cir.1984); *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir.1983); *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980). In *Schisler* we summarized the rule as follows:

> The rule, which has been the law of this circuit for at least five years, provides that a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder.

787 F.2d at 81 (citations omitted). We also noted in *Schisler* that an additional element of the rule is " 'that there is no requirement that the [treating] physician's medical testimony be supported by objective clinical or laboratory findings.' " *Id.* at 82 n. 2 (quoting *Bluvband v. Heckler, supra,* 730 F.2d at 893).

---

**1.** Patricia Happy has been allowed to intervene, and the complaints of two other disability claimants, Milagros Sullivan and Harold Johnson, have been consolidated with Stieberger's complaint.

**2.** Social Security Disability Amendments of 1980, Pub.L. No. 96–265, § 304(g), 94 Stat. 441, 456 (codified at 42 U.S.C. § 421 note (1982)).

The District Court then considered whether the Secretary was complying with the rule. The Court cited Social Security Ruling (SSR) 82–48c (1982), which provides that other things being equal, the fact that a physician treated a claimant will increase the weight accorded to that physician's opinion, but noted that this SSR does not mention that the treating physician's opinion is binding unless contradicted by substantial evidence. The Court also cited regulations suggesting that a treating physician's opinion must be supported by clinical or laboratory findings. *See* 20 C.F.R. §§ 404.1526(b), 416.925(b) (1986). Mention was also made of SSR 83–6c (1983), which adopted views expressed in *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir.1982), to the effect that a treating physician's views sometimes ought not to be given controlling weight because that physician "might have been leaning over backwards to support the application for disability benefits." Finally, the District Court placed major emphasis on decisions of this Court and of eighteen judges of the district courts within New York that have overturned denial or termination of disability benefits because of inadequate compliance or even disregard of the treating physician rule. 615 F.Supp. at 1347–49 (collecting cases).

Based on these materials, Judge Sand concluded that "the preliminary showing here is virtually as strong a showing of *de facto* non-acquiescence as can be made." *Id.* at 1349. The District Court then considered and rejected the defendants' contention that Congress had ratified the Secretary's approach to assessing the opinion of the treating physician by enacting section 9(b)(1) of the Social Security Disability Benefits Reform Act of 1984 (the "Reform Act"), Pub.L. No. 98–460, 98 Stat. 1794, 1805 (codified at 42 U.S.C. § 423(d)(5)(B) (Supp. II 1984)). That conclusion led the District Court squarely to face the legality of the non-acquiescence policy it was satisfied existed. In assessing the likelihood that the plaintiffs would prevail in demonstrating the illegality of non-acquiescence, the District Court considered the Secre-

tary's approach to non-acquiescence not only with respect to this Circuit's treating physician rule but more broadly with respect to adherence to any decisions of the courts of appeals for the various circuits. The District Court first examined the Secretary's policy prior to June 3, 1985, and then considered the modified non-acquiescence policy promulgated on June 3, 1985, in Interim Circular 185, which is currently in effect.

The District Court noted that, prior to 1985, the Social Security Administration (SSA) had broadly asserted entitlement to disregard decisions of the courts of appeals as binding authority, except in the particular case in which a decision is rendered. Sometimes SSA simply ignores a court of appeals decision "by leaving unaltered and continuing to adhere to an agency regulation or other interpretive guideline which conflicts with the decision." 615 F.Supp. at 1351. At other times the agency promulgates SSRs "which specifically direct agency personnel, including ALJs, not to abide by a particular circuit court decision." *Id.* The District Court noted that ten such SSRs have been promulgated since 1966, of which seven were still in effect. Judge Sand then marshaled powerful and persuasive arguments, resting on decisions of this and other courts, to conclude that an administrative agency is bound to apply within each circuit the law as pronounced by the court of appeals for that circuit. He concluded that the pre–1985 non-acquiescence policy of the Secretary was unlawful.

Turning to Circular 185, which is set out in full as Appendix C to the District Court's opinion, 615 F.Supp. at 1403–05, Judge Sand recognized that the new policy represents some curtailment of the virtually unbridled non-acquiescence policy of the past. Under the new policy, SSA proposes to issue a series of SSRs "identifying circuit court decisions which are at variance with established SSA policy," *id.* at 1403. The Circular sets forth a special procedure to be used by ALJs and by the Appeals Council when considering claims within the pur-

view of one of these "variance-noting" SSRs. The ALJ has three options. If he is prepared to rule in favor of the claimant, he simply issues his decision in the normal course. If he believes that an unfavorable decision is required under both SSA policy and the prevailing law of the relevant court of appeals, he issues a decision rejecting the claim but is obliged to assess the claim under both standards. If he believes that an unfavorable decision is required under SSA policy but that a favorable decision is required under the relevant law of the circuit, he *recommends* a favorable decision, accompanied by assessment of the claim under both standards.

The Circular then sets forth a procedure to be followed by the Appeals Council. It too has three options. It may remand to the ALJ for further development of the record in light of the relevant circuit law. It may rule in favor of the claimant if satisfied that such a result is required under relevant circuit law and that a ruling against the claimant would be reversed if the claimant sought judicial review.[3] Or, if the Appeals Council concludes that circuit law favors the claimant but that such law should be relitigated, it *recommends* to the SSA Special Policy Review Committee a decision unfavorable to the claimant. If the Review Committee agrees that the circuit law should be relitigated, the agency consults with the Department of Justice. If relitigation is determined to be appropriate, the unfavorable decision is issued; otherwise, circuit law is followed, and a favorable decision is issued.

Judge Sand concluded that the new nonacquiescence policy, like its predecessor, was unlawful, even though it obviously represented some effort by SSA to promote adherence to circuit law while reserving the right to identify test cases appropriate for relitigation of circuit law with which the agency disagrees. A major defect iden-

tified by the District Court was the limitation of the new procedure to the ALJ and Appeals Council levels of administrative decision-making. The policy is totally inapplicable to state agencies that make the initial decisions on disability claims. These agencies, in making decisions at the first level of consideration and at the second level of reconsideration, remain bound to follow SSA policy, without being alerted to supervening circuit law to the contrary. SSA reports that in fiscal 1984 nearly 600,000 claimants denied benefits at the state agency level did not pursue further administrative remedies at the ALJ level. 615 F.Supp. at 1371. Judge Sand also found the new policy defective even as applied to agency action at the ALJ and Appeals Council levels of review. He noted the cumbersome nature of the procedure, which obliges a claimant to persevere throughout the multi-layered administrative process before being afforded an opportunity to gain the benefit of favorable circuit law. He also noted the absence of interim benefits for claimants in whose favor an ALJ would have ruled under relevant circuit law. Finally, he found deficient the standards for selecting test cases appropriate for relitigation of circuit law.

Having concluded that the plaintiffs had shown a strong probability of success on the merits of their claim, the District Court then considered the propriety of injunctive relief. In a case of this sort, this further inquiry was entirely appropriate, even though the Court was satisfied that the standards of irreparable injury and probability of success on the merits had been shown. The requested relief is a major exercise of judicial power, not simply because it is directed at a responsible cabinet officer of the Executive Branch, but because it proposes to take far-reaching action that has the potential for bringing the Judicial Branch into protracted involvement

---

**3.** There appears to be a gap into which might fall cases where the Appeals Council may deny benefits even though persuaded that relevant circuit law favors the claimant, if the Council also predicts that an unfavorable ruling would not be reversed. Though it would seem illogical

to entertain both views, the authors of the Circular appear to believe that both may be held; otherwise, reference to the prediction of the reversal of an unfavorable ruling need not have been added.

with the Executive Branch in the administration of a complex regulatory scheme affecting hundreds of thousands of persons. When significant public interests are involved, courts have a special obligation to assess carefully the propriety of preliminary injunctive relief. *See Yakus v. United States*, 321 U.S. 414, 440–41, 64 S.Ct. 660, 674–75, 88 L.Ed. 834 (1944); *Medical Society of New York v. Toia*, 560 F.2d 535, 538 (2d Cir.1977). Of course, consideration of the public interest may indicate that a preliminary injunction is appropriate, even when significant governmental action will be affected, *see Carey v. Klutznick*, 637 F.2d 834, 839 (2d Cir.1980).

In assessing public interest concerns, the District Court first determined that Congress had taken no action that could be interpreted as endorsing the Secretary's nonacquiescence policy. On the contrary, the Conference Report on the Reform Act made clear that deletion of the differing House and Senate versions of language curtailing non-acquiescence was not to be interpreted as indicating approval of SSA's policy. The Conference Report expressed the view that the legal and constitutional issues posed by non-acquiescence "can only be settled by the Supreme Court," a view that manifestly contemplates adjudication in the lower courts. *See* H.R.Rep. No. 1039, 98th Cong., 2d Sess. 38, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3080, 3096. The District Court then assessed the consequences to the class of withholding injunctive relief and the consequences to the defendants of granting it and concluded that the nature of the relief to be awarded was necessary for the plaintiffs and not unduly burdensome for the defendants. The Court therefore issued the preliminary injunction challenged on this appeal.

The terms of the injunction are contained in paragraph 6 of the District Court's order, set forth as Appendix A to the Court's opinion. 615 F.Supp. at 1399–1401. First, the Secretary and all his agents and employees are enjoined from denying or terminating disability benefits pursuant to policies that are inconsistent with decisions of the Second Circuit. Second, the defendants

are directed to rescind, with respect to New York residents, all policies, including Interim Circular No. 185, that state a general policy of non-acquiescence or state a policy of nonacquiescence in any decision of the Second Circuit. Third, the defendants are directed to inform all agents and employees who adjudicate disability claims of all decisions of the Second Circuit that reverse decisions of the Secretary denying or terminating disability benefits and to furnish a copy of the court ruling with instructions that the ruling is to be followed. Fourth, the defendants are directed to inform all agents and employees who adjudicate disability claims that the Second Circuit's decision in *Bluvband v. Heckler, supra,* is to be followed and to furnish a copy of that decision and a copy of the District Court's phrasing of the requirements of the treating physician rule. The injunction thus imposes obligations in three categories: adjudication of claims, rescission of non-acquiescence policies, and distribution of information.

### Discussion

In challenging the District Court's preliminary injunction, the Secretary advances several contentions. Objection is raised to the basic approach of the injunction to the extent that it places adjudicators of disability claims at risk of contempt in the event the District Court concludes that they have denied benefits pursuant to policies inconsistent with Second Circuit case law. In addition, the Secretary contends that the injunction is not warranted because the accusation of non-acquiescence in the treating physician rule as announced in this Circuit is incorrect. Finally, the invalidation of the Secretary's general approach to non-acquiescence, as set forth in Interim Circular No. 185, is challenged as premature.

The District Court was not insensitive to the Secretary's concern that injunctive relief was inappropriate because it would place adjudicators of disability claims at risk of contempt. The Secretary contended in the District Court that an injunction

governing adjudication of claims would transform the normal course of judicial review of adverse agency determinations into contempt proceedings for violation of the injunction. In the District Court's view this prospect would not occur. Judge Sand sought to distinguish the provisions of the injunction that command action by the Secretary and those that govern the adjudication of claims. Contempt proceedings would be appropriate, he pointed out by way of example, if the Secretary failed to notify agency officials of the correct standard for evaluating the opinion of the treating physician, as required by paragraph 6d of the injunction. As for adjudication of claims, the District Court stated:

> [Contempt proceedings] are not appropriate where an official simply misapplies a correct legal standard to the facts of a particular case. This Court's order does not require ALJs to grant benefits in cases involving a treating physician's opinion of disability; it orders the defendants to instruct ALJs to decide cases in accordance with Second Circuit precedents on this and other issues which arise in disability determinations. As long as the provisions of this Order are fully complied with, we see no reason why unfavorable determinations will not be reviewable in accordance with the normal substantial evidence standard.

615 F.2d at 1376.

Thus, the District Court did not contemplate that an ALJ or any other adjudicator of a particular disability claim would risk contempt. Nevertheless, the terms of the Court's injunction understandably raise apprehensions among the defendants, and very likely among their employees and agents, that the risk of contempt will be present in the adjudication process. It is true that the injunction does not require benefits to be granted in any particular case. But the injunction does more with respect to the adjudication process than oblige the defendants to issue instructions to adjudicators. It specifically provides in paragraph 6a that all agents and employees of the defendants, which appears to mean members of the Appeals Council, all

ALJs, and all state officials acting as agents of the Secretary in the initial processing of claims, are enjoined from denying or terminating benefits "pursuant to policies, procedures, rulings or regulations which are inconsistent with decisions of" the Second Circuit. 615 F.Supp. at 1400. Adjudicators will not be comforted by the District Court's assurance that they do not face contempt proceedings if they are found only to have misapplied a correct legal standard to the facts of a particular case. As the treating physician rule cases of this Court and the district courts demonstrate, courts frequently cannot tell whether the adjudicator has ignored the treating physician rule and implicitly applied some more restrictive policy of the Secretary's, or have "simply" misapplied the correct legal standard. ALJs and other adjudicators could clarify matters considerably if they would indicate in their opinions that they recognize the binding authority of the treating physician rule and that they are endeavoring to apply it to the facts of the cases before them. Courts could then readily distinguish between disregard of the rule and its mere misapplication. Unfortunately, we have already seen too many cases where ALJs make no mention of the treating physician rule and give no adequate indication that they are applying it. If such cases were to recur with the injunction in effect, there would be the distinct possibility that an adjudicator would face contempt for non-compliance with the injunction, even though his denial of benefits might have resulted only from misapplication of the correct standard. Even if actual contempt proceedings would be rare, confined to adjudicators whose disregard of relevant law was established by a pattern of non-complying decisions, all adjudicators would apprehend some risk that even their good-faith efforts to apply the correct standard would be retrospectively found to be a denial of benefits pursuant to policies inconsistent with relevant law.

Whether and to what extent adherence to the standards of relevant circuit law may be enforced by placing administrative adju-

dicators under an injunction is a serious issue, requiring the most careful effort to maintain both the integrity of the administrative process and the paramount commands of law. We are not prepared to say that an injunction containing a provision like paragraph 6a is beyond the equitable power of a district court, though its use would require a very strong justification and its terms would have to make clear the distinction between refusal to apply relevant law and misapplication of relevant law to particular facts. We also have substantial doubts whether such a remedy would ever be appropriate in a preliminary injunction, where the standard on the merits is only a probability of success. Such a remedy, posing at least some risks to the orderly functioning of the administrative process no matter how carefully crafted, should normally be issued only after the merits of the lawsuit have been fully litigated.

The Secretary's more specific objection to the injunction is that it is not needed because in fact SSA complies with the treating physician rule. The Secretary represents that his policy is "essentially the same" as the requirements of our case law. Brief for Appellants at 13. Those instances where denials of benefits have been reversed for lack of compliance with the treating physician rule are said to be "only a tiny fraction of the thousands of disability claims in New York every year," *id.* at 24, and an inadequate basis from which to conclude that there has been a policy of non-acquiescence in the rule. Though we have characterized the quantity of such cases as "almost legion," *De Leon v. Secretary of Health and Human Services*, 734 F.2d 930, 937 (2d Cir.1984), there is some force to the Secretary's argument that many of the reversals involve a misapplication of the rule rather than an outright ignoring of it, and that even the few cases where we have said the rule was ignored, *e.g., Eiden v. Secretary of Health, Education and Welfare*, 616 F.2d 63, 64 (2d Cir.1980), do not necessarily demonstrate a policy of non-acquiescence. As the Secretary points out, published opinions of this Court and the district courts tend to occur where error is noticed. A pattern of disregard of the treating physician rule, sufficient to show a policy of non-acquiescence, would be more solidly demonstrated if the rule were shown to have been ignored in a significant fraction of a random sample of cases at the ALJ level involving the opinion of a treating physician. At the same time, it is worth pointing out that the Secretary's claim of compliance with the treating physician rule would be more persuasive if supported by an SSA survey of ALJ decisions in this area. Having failed to undertake such a survey to demonstrate its alleged compliance in the face of repeated judicial criticisms, the agency does not cover itself with glory by cavalierly dismissing the District Court's conclusion of non-acquiescence as "absurd." Brief for Appellants at 24.

The Secretary mounts a strong challenge to the injunction's invalidation of Interim Circular No. 185. As explained above, that policy, designed to identify test cases for relitigation of circuit law, contemplates implementation through a series of SSRs. At the time the preliminary injunction was ordered, no implementing SSRs had been issued. Thus, there is some merit to the claim that the validity of the Interim Circular is not yet ripe for decision. On the other hand, the limitation of the Circular to decision-making at the ALJ and Appeals Council levels renders it vulnerable to the criticism of the District Court that it tolerates a considerable degree of non-acquiescence at the state agency levels of adjudication. Moreover, the Secretary has not advanced any substantial argument against those provisions of the injunction that endeavor to preclude non-acquiescence by means other than the Interim Circular. For example, we have been given no reason why the District Court was not entirely correct in ordering the rescission of any policies or rulings of the defendants that "state specific non-acquiescence in any decision of the United States Court of Appeals for the Second Circuit." 615 F.Supp. at 1400.

As we indicated at the outset, the context in which all of the Secretary's objections to

the injunction arise has been significantly altered by our decision in *Schisler v. Heckler, supra,* rendered on April 2, 1986, several months after Judge Sand issued the injunction. A cross-appeal taken by the plaintiffs in that litigation had requested us to direct the District Court for the Western District of New York, from which that appeal arose, to issue an injunction requiring the Secretary to apply the treating physician rule in adjudicating the disability claims of members of the large class of New York residents in that case.[4] We disagreed with the Secretary's contention that we lacked the authority to impose substantive requirements on the adjudication of disability claims, *id.* at 82, but nevertheless determined that a more limited remedy than that requested by the plaintiffs was appropriate. In the course of that appeal, counsel for the Civil Division of the Department of Justice, representing the Secretary, had assured us that the policy of the Secretary with respect to the treating physician rule " 'is clear' " and " 'is the same as the second circuit rule.' " *Schisler v. Heckler, supra,* 787 F.2d at 83. We accepted that representation "at face value." *Id.* at 84. We expressed serious concern, however, over the Secretary's failure, acknowledged by counsel during the argument, to inform adjudicators of the content of the treating physician rule. Accordingly, we directed the District Court on remand to order SSA to "state in relevant publications to be determined by the district court that adjudicators at all levels,

state and federal, are to apply the treating physician rule of this circuit." *Id.* at 84.

The injunction ordered in *Schisler* substantially reduces the need for the preliminary injunction issued by Judge Sand in the pending case. Under the supervision of Judge Elfvin in the Western District of New York, the Secretary is now obliged to formulate and issue instructions to all adjudicators, state and federal, concerning the content of the treating physician rule and the requirement of its use.[5] This remedy, when implemented, should accomplish what Judge Sand sought to accomplish in paragraph 6d of his injunction. The *Schisler* injunction also meets Judge Sand's well-taken criticism that Interim Circular No. 185 did not avoid the risk of non-acquiescence at the state agency levels of claims adjudication. The *Schisler* remedy does not deal with the problem of non-acquiescence beyond the context of the treating physician rule, nor does it place adjudicators under any risk of contempt in the course of deciding specific cases. To the extent that Judge Sand's preliminary injunction ventures into these areas, we have concluded that, though it was not necessarily erroneous when issued, it ought to be vacated in light of the relief we have ordered in *Schisler.* Though compliance with the law of this Circuit remains our objective, we believe that measured responses are appropriate, increasing in rigor only upon some satisfactory indication that steps already taken are inadequate. All of the relief ordered by Judge Sand may not

---

**4.** The class in *Schisler* comprises all persons in New York State who have or will be found eligible for disability benefits and were terminated from coverage after June 1, 1976, "without substantial medical evidence to show that their medical condition has improved since their original determination of disability to the point where he or she is able to engage in substantial gainful activity." *Schisler v. Heckler, supra,* 787 F.2d at 80. Confined to instances of termination without evidence of medical improvement, the *Schisler* class is not as extensive as the *Stieberger* class, which includes all New York residents denied new or continued disability benefits since October 1, 1981.

**5.** The formulation of the treating physician rule that we ordered transmitted to state and federal

adjudicators deliberately omitted the component, enunciated in *Bluvband v. Heckler, supra,* 730 F.2d at 893, "that there is no requirement that the physician's medical testimony be supported by objective clinical or laboratory findings" (citations omitted). This component was omitted because of the Secretary's contention in the pending litigation that section 3(a)(1) of the Reform Act, 42 U.S.C. § 423(d)(5)(A) Supp. II 1984), had changed the rules for evaluating a claimant's subjective symptoms. *See Schisler v. Heckler, supra,* 787 F.2d at 81–82 n. 2. Since we are vacating the preliminary injunction issued in the pending case, we do not decide at this stage of the litigation the bearing, if any, of the Reform Act on the above quoted statement from *Bluvband.*

be necessary. Rather than prune his injunction to preserve those portions that might be appropriate, we prefer to proceed for now with only the *Schisler* injunction. This will minimize intrusion into the administrative process and at the same time accord the Secretary the opportunity to demonstrate his good-faith compliance with the law of this Circuit and his readiness to take appropriate action to see that law implemented throughout the administrative process that he supervises.

Our decision to vacate the preliminary injunction does not, however, preclude the possibility that some form of injunctive relief may be warranted when the merits of the plaintiffs' claims have been adjudicated. Though the conduct of the litigation remains within the discretion of the District Court, it might be appropriate to move expeditiously with resolution of any claims affecting the benefits of the named plaintiffs, leaving for later consideration the need for and content of any class relief with respect to the treating physician rule and issues of nonacquiescence. We assume that the District Court will, with the assistance of counsel, be kept informed of the progress of formulating and implementing the *Schisler* injunction. Any indication that the Secretary is not proceeding expeditiously to issue adequate instructions about the treating physician rule to all adjudicators will provide substantial basis for the formulation of appropriate injunctive relief at the conclusion of the pending litigation before Judge Sand. Indeed, there may well be room for cooperation between Judges Elfvin and Sand toward the end that the legitimate needs of members of both the classes they have certified will be met. Furthermore, the ensuing course of the litigation before Judge Sand will afford the Secretary an opportunity to inform the District Court whether SSA continues to keep in effect policies or rulings that disregard applicable law of this Circuit with respect to residents of the Circuit. The existence of any such policies and the Secretary's position with respect to them may be given due consideration in the determination of the content of any final injunction

that may be issued in this case. Finally, the parties will have an opportunity to bring to the District Court's attention any SSRs that may have been issued pursuant to Interim Circular No. 185 so that the need for any relief with respect to the Circular may be assessed in light of its implementation. Whether or not any permanent injunction should be issued will depend on what the record discloses when finally concluded.

For all of the foregoing reasons, the preliminary injunction is vacated.