The STATE OF NEW YORK, Cesar Perales, as Commissioner of the New York State Department of Social Services, the City of New York, the County of Suffolk, Peter F. Cohalan, as County Executive of the County of Suffolk, Anita Romero, as Commissioner of the Suffolk County Department of Social Services, and Walthon White, Haydee Guzman, Anibal Villanueva, Rafael Rivera, Gladys Dominguez, Hector Muniz, Luis Diaz, Cathryn Gibbons, Maria Gonzalez, Jorge Perez, Edwarda Rivera, and Hermina Gonzalez, and all others similarly situated, Plaintiffs,

v.

Otis R. BOWEN, M.D., as Secretary of the United States Department of Health and Human Services, Martha McSteen, as Commissioner of the Social Security Administration, and the United States Department of Health and Human Services, Defendants.

No. 83 Civ. 5903.

United States District Court, S.D. New York.

Jan. 12, 1987.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, pro se and for plaintiff Cesar Perales; Paul M. Glickman, Evelyn M. Tenenbaum, Marla Tepper, Asst. Attys. Gen., of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for plaintiff City of N.Y.; Lois May, Asst. Corp. Counsel, of counsel.

Suffolk County Atty., Hauppage, N.Y., for Suffolk County, Peter F. Cohalan, as County Executive of Suffolk County, and Anita Romao, As Comr. of Suffolk County Dept. of Social Services; Robert Cimino, Asst. Co. Atty., of counsel.

Bronx Legal Services, Bronx, N.Y., for individual plaintiffs Cathryn Gibbons, Maria Gonzalez, Hector Muniz, Jorge Perez, Edwarda Rivera, and Class Representative; Lucy Billings, Director of Litigation, of counsel.

MFY Legal Services, Inc., New York City, for individual plaintiffs Haydee Guzman, Anibal Villanueva, Rafael Rivera, Gladys Dominguez, Luis Diaz, Hermina Gonzalez, and Class Representative; Margaret Sandercock, of counsel.

New York Lawyers for Public Interest, New York City, for Class Representative; Lewis Golinker, of counsel.

Legal Services for the Elderly, New York City, for individual plaintiff Walthon White and class representative; Toby Golick, Senior Atty., of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendants; Frederick M. Lawrence, Asst. U.S. Atty., Annette H. Blum, Chief Cousnel—Region II, Gail N. Mancher, Asst. Regional Counsel, Office of the General Counsel, Dept. of Health and Human Services, of counsel.

ROBERT L. CARTER, District Judge.

This class action charges the Secretary of the Department of Health and Human Services ("the Secretary")[1] with an unlawful policy of withholding disability benefits. Specifically, plaintiffs allege that by applying certain *per se* rules, the Secretary has denied or terminated Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") to individuals disabled by cardiovascular impairments, in violation of the Social Security Act ("the Act"), 42 U.S.C. § 301 *et seq.*, its implementing regulations, and the due process clause of the Fifth Amendment. Plaintiffs also allege that defendants' failure to publish these rules violated the notice and comment provisions of the Administrative Procedures Act, 5 U.S.C. § 553.

In an earlier opinion, *sub nom. State of New York v. Heckler*, 105 F.R.D. 118 (S.D. N.Y.1985) (Carter, J.), with which familiari-

---

[1]. Otis R. Bowen, M.D., succeeded Margaret Heckler as the Secretary of the Department of Health and Human Services on December 13, 1985, and is substituted as a defendant herein. Rule 25(d), F.R.Civ.P.

ty is assumed, the court certified a class consisting of:

> All New York State residents with cardiovascular impairments whose applications or eligibility for SSDI or SSI disability benefits have been or will be denied or terminated by the application of *per se* denial rules on or after June 1, 1980.

*Id.* at 122. The court further certified a subclass of individuals from the above class consisting of those:

> Who have ischemic heart disease, hypertensive vascular disease, myocardiopathies, or rheumatic or syphilitic heart disease and whose disability benefits have been or will be denied or terminated based on the application of *per se* denial rules pertaining to treadmill exercise tests.

*Id.* (footnote omitted). Twelve members of the subclass are joined as named plaintiffs by the State and City of New York, Suffolk County, and the New York State and Suffolk County Departments of Social Services.

Plaintiffs have moved for partial summary judgment or alternatively for a preliminary injunction to forbid the Secretary's use or enforcement of the allegedly *per se* rules in disability determinations. Defendants have cross-moved for partial summary judgment declaring the challenged policy valid.

## BACKGROUND

Disability determinations in New York begin with initial consideration and reconsideration by an authorized state agency, the Office of Disability Determinations ("ODD") of the New York State Department of Social Services. *See* 42 U.S.C. §§ 421(a), 1383b(a).[2] Disappointed claimants may seek federal administrative review by the Social Security Administration, including a hearing before an administrative law judge and an appeal to the Appeals Council. 42 U.S.C. §§ 405(b)(1), 1383(c)(1); *see Bowen v. City of New York,* — U.S. —, —, 106 S.Ct. 2022, 2025, 90 L.Ed.2d 462 (1986).

At all stages of this administrative process, a five-step sequence is followed in determining whether a claimant is entitled to SSDI or SSI benefits. 20 C.F.R. §§ 404.1520, 416.920 (1986); *see Bowen v. City of New York, supra,* — U.S. at —, 106 S.Ct. at 2025. A claimant triggers the sequence by alleging a disability, that is, the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuing period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Once triggered, the sequence in brief is as follows:

(1) A claimant who is presently working is conclusively presumed not disabled. (2) A non-working claimant is presumed not disabled unless his impairment or combination of impairments exceeds a threshold level of severity.[3] (3) A non-working claim-

---

**2.** ODD's federal funding and its authority to make determinations depend on its compliance with the Secretary's regulations and guidelines, and its decisions are directly reviewable by the Secretary. 42 U.S.C. §§ 421(a)(2), 421(c), 421(e), 1383b(a); *see Bowen v. City of New York,* — U.S. —, —, 106 S.Ct. 2022, 2025, 90 L.Ed.2d 462 (1986). Plaintiffs accordingly bring this action to challenge the Secretary's alleged enforcement of ODD's compliance with *per se* rules, as well as his own alleged use of such rules in determinations at the federal level. Subsequent discussion of the Secretary's disability adjudication policy should be understood to encompass both his own determinations and his enforcement of state determinations.

**3.** Judge Lasker has preliminarily enjoined the Secretary from applying this "threshold severity" regulation, 20 C.F.R. §§ 404.1520(c), 416.-920(c), to the class of New York State residents whose SSDI or SSI benefits the Secretary has withheld or would withhold on the basis of the restriction. *Dixon v. Heckler,* 589 F.Supp. 1494, 1502–06, 1511 (S.D.N.Y.1984) (Lasker, J.), *aff'd,* 785 F.2d 1102 (2d Cir.1986). Although some of the plaintiff subclass members in the instant case may also be members of the *Dixon* class, plaintiffs do not rely on the Secretary's application of the unlawful regulation as a ground for challenging other policies in this case. Accordingly, the court expresses no opinion whether, independent of the violations alleged herein, the Secretary has wrongfully withheld disability

ant with an impairment of at least threshold severity is conclusively presumed disabled if his impairment "meets" or "equals" the Listing of Impairments (the "Listings"), 20 C.F.R. Part 404, Subpt. P, App. 1 (1986).[4] (4) A claimant for whom no determination is made in the first three steps is found not disabled at this step if his residual functional capacity ("RFC") enables him to perform the sort of work he has previously done. (5) If in step 4 a claimant is considered unable to perform his previous work, he will be found disabled if on the basis of his RFC, age, education, and work experience he is unable to do any other substantial work.

The dispute in this case concerns the procedures followed at steps 3, 4 and 5. At step 3, the Listings provide for various medical tests by which a claimant may meet or equal an enumerated cardiovascular impairment and thereby conclusively establish disability.

For the subclass members who complain of ischemic heart disease,[5] "the primary basis for adjudicating claims" is the results of the treadmill exercise test. The treadmill test measures a patient's heart condition based on electrocardiographic responses, changes in blood pressure, chest pain, and other symptoms, as the individual walks or runs on a treadmill with progressively greater speed and steeper grade.

The treadmill test need not be the only basis for adjudicating claims, provided that the claimant can supply evidence of other impairments severe enough alone or in combination to equal the Listings.[6] Affida-

vit of Marvin Lachman, Apr. 15, 1986, ¶ 7; Affidavit of Barbara G. Rodbart, Nov. 15, 1985, ¶¶ 33–35, Exh. M at 5. Nor can the results of the test be controlling if they are unreliable or unavailable. Listings § 4.00G4. They may be unreliable if the testing does not conform to an acceptable protocol, id. § 4.00G2, or took place more than a year ago, Affidavit of Marvin Lachman, Apr. 15, 1986, ¶ 6; Affidavit of Barbara G. Rodbart, Nov. 15, 1985, Exh. H at 3, or if the claimant's condition has subsequently deteriorated. Listings § 4.00G4. They may be unavailable because performance of the treadmill test itself poses a significant risk to the claimant's health. Id. § 4.00G3.

However, if the claimant has no additional impairments and "if there is documentation of an acceptable treadmill exercise test," then only the results of that test are considered, and other medical reports such as angiographic, radio-isotopic ventriculographic, or resting electrocardiographic findings are dismissed as "not applicable." Listings §§ 4.00G4, 4.04B; Defendants' Reply Memorandum at 8; Plaintiffs' Reply Memorandum at 3–5.

If the Secretary finds that a claimant's medical condition does not meet or equal the Listings so as to conclusively establish disability, the analysis proceeds to step 4 and, if necessary, step 5. At these steps, the Secretary considers the claimant's RFC—the range of activities that he still can do in spite of his impairment.

Treadmill test results continue to be of weighty significance in this evaluation.

---

benefits from plaintiff subclass members on the ground that their impairments are not severe.

4. An impairment "meets" the Listings if it is specifically included therein, and "equals" the Listings if, though not itself included, it is equal in severity to at least one impairment that is enumerated. 20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.926 (1986).

5. Apparently, all of the named subclass members suffer from ischemic heart disease, although the subclass is defined also to include individuals impaired by hypertensive vascular disease, myocardiopathies, or rheumatic or syphilitic heart disease. The parties largely confine their discussion to the Secretary's disability

determinations for claimants with ischemic heart disease. However, the Secretary may incorporate the procedures at issue here in adjudicating the claims of unnamed subclass members with other of these impairments. See Listings §§ 4.03, 4.09. The court's conclusion as to the challenged procedures should therefore control the validity of the Secretary's adjudication of the latter group of claims insofar as he does in fact incorporate the challenged procedures.

6. Similarly, a claimant who does not undergo a treadmill test can establish disability if other medical evidence in the record shows that his impairment or combination of impairments meets or equals the Listings. See Listings §§ 4.00G1, 4.00G4, 4.04B.

Guidelines issued by the Secretary correlate the ability to perform work at a given level of exertion with electrocardiographic findings at specific intervals of the treadmill test. Department of Health and Human Services, Program Operations Manual System ("POMS"), ¶ DI 00401.590C. An irregular electrocardiographic response at any interval indicates the simple presence of a cardiovascular impairment. An individual's ability to work in spite of the impairment is inferred from the interval at which the irregular response is first registered. Thus, if a claimant registers an irregular electrocardiographic response before he reaches five "METs" [7] on the treadmill test (or five times the approximate oxygen uptake required at rest), his impairment meets the Listing for ischemic heart disease, and he is presumed unable to work. Listings, § 4.04A. However, if an irregularity arises between five and seven METs, the Secretary assumes that the ability to do light work "ordinarily would be retained." POMS, ¶ DI 00401.590C. If an irregularity is first detected at the interval between seven and ten METs, the ability to do medium work "ordinarily would be retained." *Id.* If none is detected until after the claimant reaches ten METs (or if no irregularity is detected at all), the claimant is apparently deemed able to do heavy work. Affidavit of Marvin S. Lachman, Apr. 30, 1985, ¶ 32.

The parties appear to disagree on how conclusive the Secretary's presumption is as to an individual's ability to work at a given level of exertion. The Secretary's regulations provide that the RFC assessment "is based on all of the medical evidence we have, including any other assessments that may have been provided by treating or examining physicians, consultative physicians, or any other physician designated by the Secretary." 20 C.F.R. §§ 404.1546, 416.946 (1986). Nevertheless, plaintiffs contend, in practice when a claimant has undergone a valid, up-to-date treadmill test and alleges only one impairment, no medical evidence apart from the results of the test are considered in the RFC assessment.[8] Defendants assert, by contrast, that in accord with the regulations an ODD staff physician "must consider the medical findings and results of any and all diagnostic tests in the record as well as any medical assessment that has been submitted by an examining physician," including nuclear test studies, echocardiograms, and arteriography. Affidavit of Barbara G. Rodbart, Nov. 15, 1985, ¶ 38.

The same reliability and availability that is required of treadmill test reports used in the Listings analysis also is required for their use in RFC assessments. Listings § 4.00G. Thus, if a treadmill report is unacceptable or unavailable, other medical evidence may be considered in the assessment. Likewise, evidence of impairments over and beyond ischemic heart disease is again considered.

For claimants alleging ischemic heart disease as their only impairment, however, testimony given in depositions supports the view that acceptable treadmill results do take exclusive precedence in RFC assessments. Dr. Ralph Weber, a consultant in cardiology for the Social Security Administration, testified that the functional abilities of such a claimant will never be found restricted beyond what is directed by the POMS guidelines. Medical evidence (such as an angiogram) to the contrary cannot serve to rebut the directed result.[9] Dr.

---

7. The intervals are measured in multiples of METs, one MET representing the estimated oxygen uptake of an individual at rest.

8. Plaintiffs agree, however, that at least as of late the Secretary allows evidence of two additional factors, namely, the effects of work-related stress and environmental restrictions (such as temperature) on the claimant. Plaintiffs' Surreply Memorandum at 8.

9. Dr. Weber's deposition reads in part:

> Q Suppose that the claimant has had an angiogram and that the results meet the [L]istings. Can the claimant be found capable of performing only light work based on the results of the angiogram if he has also had a stress test [i.e., a treadmill test] and has completed 7 METs without significant positive [irregular] findings?
> A No.
> Q Is there any set of circumstances absent other types of heart impairments under which a claimant can be found to meet or equal the

Marvin Bierenbaum, at the time of his deposition the Social Security Administration's Regional Medical Advisor for the New York Region, similarly testified that the treadmill test (alternatively referred to as the stress test) takes precedence over other medical tests. Again, angiograms and other tests tending to a contrary result are of no effect.[10]

To summarize, plaintiffs argue that when a claimant alleging one impairment has an acceptable treadmill test report in his file, the Secretary does not allow consideration of other medical evidence for purposes of either the Listings analysis or the RFC assessment. Defendants cite regulations calling for the consideration of all relevant medical evidence in both evaluations. However, they acknowledge that when acceptable treadmill results are on file, the Listings analysis proceeds according to criteria exclusively applicable to those results. In addition, two of the Secretary's medical experts have agreed that, except where multiple impairments are alleged, acceptable treadmill test findings

> [L]istings for ischemic heart disease or to be capable of performing only light work if he has completed 7 METs on the stress test without significant positive findings?
>
> A  No heart disease other than ischemic heart disease completes 7 METs, are there any circumstances under which—
>
> Q  —can be found capable of performing only light work.
>
> A  Not if there is no other disease or impairment.
>
> . . . . .
>
> Q  Is there any set of circumstances under which a claimant without other heart impairments can be found to meet or equal the [L]istings for ischemic heart disease or to be capable of performing only light or medium working [sic] who has completed 10 METs on the stress test without significant positive findings?
>
> A  No.
>
> Affidavit of Marla Tepper, Apr. 17, 1986, Exh. A at 122–23.

10.  Dr. Bierenbaum's deposition reads in part:

> Q  In the absence of a non-cardiovascular complaint, could the individual be found solely on the basis of his ischemic heart disease to be capable of performing only light work if he had completed seven [MET]s on the stress test without any significant positive findings?
>
> A  No, the presumption would be that he should be able to do medium work.
>
> Q  Suppose the claimant has ischemic heart disease and has had an angiogram; suppose that the result of the angiogram meets the [L]istings. Can the claimant be found to meet the [L]istings based on the results of the angiogram if he has also had a stress test and he has completed seven [MET]s without any significant positive findings?
>
> A  The answer to that would be no, because a stress test takes precedence.
>
> Q  Suppose, again, that the claimant has had an angiogram and that the results meet the [L]istings. Can the claimant be found capable of performing only light work based on the result of the angiogram if he has also had a stress test and has compeleted seven [MET]s without significant positive findings?

> A  The answer, so as not to be redundant on the other one, is that he would be found to be capable of doing medium work.
>
> Q  I believe you have answered this, but just so we are completely clear, is there any set of circumstances under which the claimant can be found to meet or equal the [L]istings for ischemic heart disease or to be capable of performing only light work if he has completed seven [MET]s on the stress test without any significant positive findings?
>
> A  No.
>
> . . . . .
>
> Q  Suppose a claimant has ischemic heart disease and has had an angiogram; suppose the results of the angiogram meet the [L]istings. Can the claimant be found to meet the [L]istings based on the results of the angiogram if he has also had a stress test and has completed ten [MET]s without significant positive findings?
>
> . . . . .
>
> A  The answer is that he cannot be found to meet the [L]istings.
>
> Q  Can he be found capable of performing only light work based on the results of an angiogram that meets the [L]isting [sic] if he has performed ten [MET]s?
>
> A  No.
>
> Q  Can he be found capable of performing only medium or light work based on the results of an angiogram that meets the [L]istings?
>
> A  No.
>
> Q  And just for the record, is there any set of circumstances under which the claimant can be found to meet or equal the [L]istings for ischemic heart disease, or be capable of performing only light or medium work if he has completed ten [MET]s on the stress test without significant positive findings?
>
> A  The answer would be yes, again, should there be a second condition.
>
> Q  In the absence of a second condition?
>
> A  No.
>
> Affidavit of Marla Tepper, May 7, 1985, Exh. A at 24–27.

alone are determinative in RFC assessments.

## DISCUSSION

■ Congress has entrusted the Secretary with exceptionally broad authority to prescribe standards for disability adjudication and the court may intervene only if the Secretary's standard exceeds his broad authority or is arbitrary and capricious. *Heckler v. Campell*, 461 U.S. 458, 466, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983). Of course, the Secretary may exceed his authority not only by promulgating illegal regulations, *see Dixon v. Heckler*, 785 F.2d 1102, 1106 (2d Cir.1986), but also by enforcing an illegal *de facto* policy not encompassed or authorized by his own regulations. *See Stieberger v. Heckler*, 615 F.Supp. 1315, 1349 (S.D.N.Y.1985) (Sand, J.), *vacated on other grounds*, 801 F.2d 29 (2d Cir.1986). Under the circumstances of this case, the Secretary's challenged policy does conflict with the provisions of the Social Security Act. Because the conflict is dispositive of the motions before the court, plaintiffs' contention that the policy violates the Fifth Amendment need not be considered. *See Califano v. Yamasaki*, 442 U.S. 682, 692, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979). Similarly, the court need not base its holding on a violation of the Administrative Procedures Act, 5 U.S.C. § 553, resulting from the Secretary's failure to publish the policy in the Federal Register. That issue was raised but not entirely resolved in the court's previous opinion. *State of New York v. Heckler, supra*, 105 F.R.D. at 120–22. While the court finds that a sufficient showing of illegal nonpublication has been made for jurisdictional purposes, the decision whether the Secretary's policy is valid does not otherwise depend on any violation of publication requirements.

The Act provides generally that:

An individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any kind of substantial gainful work....

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

■ This language requires that a claimant be given the opportunity to present evidence relevant to disability before the Secretary decides his claim. *See, e.g., Dixon v. Heckler*, 589 F.Supp. 1494, 1502–06 (S.D.N.Y.1984) (Lasker, J.), *aff'd*, 785 F.2d 1102 (2d Cir.1986). The Secretary's regulation implementing the disability determination sequence opens with a like commitment to consideration of relevant evidence: "We consider all material facts to determine whether you are disabled." 20 C.F.R. §§ 404.1520(a), 416.920(a) (1986).

Congress's recent amendments to the Act are similarly unequivocal. Section 9(b)(1) of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794, provides:

In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Secretary shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under disability. In making any determination the Secretary shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.

42 U.S.C. § 423(d)(5)(B). Section 2(c) likewise provides in part:

Any determination under this paragraph shall be made on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition which is presented by the individual or secured by the Secretary. Any determination made under this paragraph shall be made on the basis of the weight of the

evidence and on a neutral basis with regard to the individual's condition. . . .

42 U.S.C. § 1382c(a)(5).

Congress's command to hear all of the evidence is not new. The amendments apply, with certain exceptions, only to those subclass members for whom the Secretary made or will make disability determinations on or after October 9, 1984. Pub.L. No. 98–460, §§ 2(d), 2(e). However, the basic rule of evidence applicable to administrative agencies generally is that "[a]ny oral or documentary evidence may be received" and an agency is to exclude evidence only when it is "irrelevant, immaterial, or unduly repetitious." 5 U.S.C. § 556(d). "A party is entitled to present his case or defend by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." *Id.* The Social Security Act, since well before the recent amendments, likewise has called for "individualized determinations based on evidence adduced at a hearing." *Heckler v. Campbell, supra,* 461 U.S. at 467, 103 S.Ct. at 1957 (citing 42 U.S.C. §§ 405(b) (1976 ed., Supp. V), 423 (d)(2)(A)). Finally, the Secretary's own stated rule since at least as early as 1968 also shows a preference for full and true disclosure of the facts: "Whether or not an impairment in a particular case . . . constitutes a disability . . . is determined from all the facts of that case." 20 C.F.R. § 404.-1520(a) (1968), *quoted in Chico v. Schweiker,* 710 F.2d 947, 949 (2d Cir.1983).

**A.** *Listings Analysis*

It therefore comes as a surprise that once acceptable treadmill results are in the file of a claimant with ischemic heart disease, they control the Listings analysis *to the exclusion* of other medical evidence. Defendants assert that the Listings provide several approaches for evaluation of ischemic heart disease, and that absent an acceptable treadmill test report, other medical evidence may be considered under the criteria applicable to it, set forth in sections 4.04B and 4.04C of the Listings. Correlatively, however, when an acceptable treadmill test is available, the only approach permitted under the Listings is the criteria in section 4.04A, applicable exclusively to treadmill results.

Defendants argue that there is substantial medical support for the use of the treadmill test in adjudicating claims of cardiovascular impairments. No doubt there is support for the test, though plaintiffs have significantly undercut defendants' representation of how accurate the test is.[11] The issue, however, is not the test's accuracy, but whether there is any justification for supplanting admittedly material and objective medical findings with the results of a single test. Because defendants concede that the treadmill test is often inaccurate, *see* note 11 *supra,* they forego the argument that alternative medical tests are excludable as unduly repetitious or superfluous. Where no test is perfect, in other words, every test that is helpful ought to be considered.

■ The Secretary's reliance on treadmill results in certain cases would be perfectly appropriate if the test measured a subject matter (such as jobs in the national economy) susceptible of resolution within a single rulemaking proceeding. *See, e.g., Heckler v. Campbell, supra,* 461 U.S. at 467–68, 103 S.Ct. at 1957–58 (1983). The determination of a claimant's medical condition, by contrast, is necessarily among the most individualized, case-by-case decisions that the Secretary makes. *Id.* at 467, 103 S.Ct. at 1957 (citing 42 U.S.C. § 423(d)(2)(A)). To ignore all medical findings other than the treadmill test results deprives the claimant of the opportunity to prove his "particular limitations" not reflected in the latter results. *See Heckler v.*

---

**11.** As plaintiffs point out, the study on which defendants place primary reliance for the accuracy of the treadmill test concludes that the test fails to identify the presence of ischemic heart disease 38 percent of the time, rather than 11 percent as defendants assert. *Compare* Plaintiffs' Reply Memorandum at 15 & n. *, 16 & n. *, *with* Affidavit of Peter Chodoff, M.D., Nov. 14, 1985, ¶ 19 (citing Bruce, *Values and Limitations of Exercise Electrocardiography,* 50 Circulation (July 1974)).

*Campbell, supra,* 461 U.S. at 462 n. 5, 467 n. 11, 103 S.Ct. at 1955 n. 5, 1957 n. 11. As the claimant bears the burden of making a *prima facie* case of disability, 42 U.S.C. § 423(d)(5), 1382c(a)(3), it is unfair thus to take away his means of proving his case.

Exclusion of medical evidence has other impermissible ramifications. Findings and conclusions of a treating physician cannot be given the weighty consideration they are due, *see Stieberger v. Bowen,* 801 F.2d 29, 31 (2d Cir.1986), when treadmill results displace them. A claimant's subjective complaints of pain, with or without corroborating objective findings, also cannot be considered as is required. *See Mimms v. Heckler,* 750 F.2d 180, 185–86 (2d Cir.1984).

In short, an administrative adjudicator cannot be expected to reach an independent judgment in applying the Listings when presented with only some of the facts.[12] As there is no dispute about the exclusion of much medical evidence from the Listings analysis when an acceptable treadmill report is available, plaintiffs are entitled to judgment as a matter of law. *See Empire Electronics Co. v. United States,* 311 F.2d 175, 179 (2d Cir.1962); Rule 56(c), F.R. Civ.P.

### B. *Residual Functional Capacity*

The exclusion of relevant medical evidence from the RFC evaluation at steps 4 and 5, if established, would also entitle plaintiffs to summary judgment for essentially the reasons set out above. The RFC assessment, like the determination whether a claimant's impairment meets or equals the Listings, is of necessity highly individualized. *See Bowen v. City of New York, supra,* —— U.S. at ——, 106 S.Ct. at 2027. In other words, the claimant must be given the chance to show that the treadmill test should not apply to him, and to rebut the test results with other medical evidence of his particular limitations. *See Heckler v.*

*Campbell, supra,* 461 U.S. at 462 n. 5, 467 & n. 11, 103 S.Ct. at 1955 n. 5, 1957 & n. 11. This other evidence means any facts relevant to the claimant's own functional abilities, including but not limited to treating physicians' opinions and the claimant's subjective complaints of pain. Simply put, the claimant's RFC must be evaluated individually, not bureaucratically. *See Bowen v. City of New York, supra,* —— U.S. at ——, 106 S.Ct. at 2027 & n. 5; *see also Cabral v. Heckler,* 604 F.Supp. 831, 835 (N.D.Cal. 1984).

Defendants argue that the treadmill test is the only commonly available test that can provide information directly pertinent to RFC assessments. The answer to this contention, to the extent it remains unaddressed, is that claimants have the right to present pertinent evidence indirectly as well as directly. Much medical evidence, which defendants imply is not directly pertinent, reflects a diagnosis for the presence of ischemic heart disease rather than a measure of the "graded functional loss" resulting from the disease. Defendant's Reply Memorandum at 13–14. No one argues, however, that diagnostic evidence of heart disease is not probative of a claimant's capacity to function and to work. Indeed, certain medical findings such as an angiogram may by themselves establish heart disease of such severity that under the Listings analysis a claimant's disability is conclusive. Yet if the claimant's file includes treadmill results indicating a capacity to work, and if such results are in fact given exclusive precedence, other medical findings are effectively ignored no matter how severe they reflect an impairment to be. Such an arbitrary outcome is inconsistent with the individualized scheme of disability adjudication that the Social Security Act requires. *See Heckler v. Campbell, supra,* 461 U.S. at 467, 103 S.Ct.

---

**12.** The exclusiveness of the Secretary's reliance on treadmill results is not mitigated by the general proposition that a claimant with an *unlisted* impairment can "equal the Listings" by proving that his impairment is equal in severity to a listed impairment, 20 C.F.R. §§ 404.1526(a), 416.926(a). That proposition has no bearing on the issue here because, quite simply, ischemic heart disease is a listed impairment. Listings, §§ 4.00D, 4.04. Plaintiffs' assertion that treadmill results supplant other relevant evidence in the adjudication of claims of this listed impairment remains uncontradicted.

at 1957; *Cabral v. Heckler,* 604 F.Supp. at 835.[13]

As already noted, however, the parties have taken sides in a debate matching the purport of the Secretary's regulations against the testimony of his medical experts. If the debate raises a *genuine* issue as to some material fact, partial summary judgment for either party will be improper and resolution of the debate will have to await trial. Rule 56(c), F.R.Civ.P.; *see Empire Electronics Co., supra,* 311 F.2d at 180–81.

At the same time, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* ——— U.S. ———, ———, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The evidence must be significantly probative, not just colorable, *id.,* because the summary judgment rule is aimed at isolating and disposing of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* ——— U.S. ———, ———, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In the instant case, plaintiff has carried its initial burden—as a party moving for partial summary judgment—of informing the court of the basis for the motion and identifying those portions of the affidavits, depositions, and like materials which demonstrate the absence of a genuine issue of material fact. *See id.* Specifically, plaintiffs point to the deposition testimony of Drs. Weber and Bierenbaum as indicative of an undisputed policy in fact of precedence for treadmill results and exclusion of other medical evidence from RFC assessments. *See* notes 9–10 *supra.*

At this point, it is incumbent upon defendants to come forth, by affidavits or other discovery materials, with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett, supra,* ——— U.S. at ———, 106 S.Ct. at 2553 (quoting Rule 56(e), F.R.Civ.P.). Defend-

ants obviously have alleged that, contrary to plaintiffs' contentions, the Secretary's policy for RFC assessments is consistent with what the regulations require. They so allege in their pleadings and in affidavits of Barbara G. Rodbart, the Social Security Administration's Director of Disability Programs for the New York Region.

However, rather than designating "specific facts" to substantiate their version of the Secretary's policy, defendants' assertions in their pleadings and affidavits are based almost entirely on the rules themselves: that is, regulations and other guidelines such as the POMS and Social Security rulings, which reiterate the regulations. Significantly, defendants neither attempt to impeach nor address the deposition testimony of the Secretary's medical experts, Drs. Weber and Bierenbaum. Rather, they rely on interpretations of the Secretary's rules by Ms. Rodbart, an official responsible for implementing disability policy. Invocation of what the rules require is insufficient to show that the Secretary's actions meet those requirements.

Moreover, even if bare citation of regulations and guidelines could for present purposes constitute a sufficient factual showing, defendants' rendering of the relevant rules is itself equivocal. Ms. Rodbart's affidavit states that POMS guidelines do not require exclusion of other relevant medical evidence:

The suggested RFC set forth in the POMS [¶ DI 00401.590C] is based solely on the performance of the treadmill exercise test to certain exercise (MET) levels without positive signs of ischemia and reflects SSA's [the Social Security Administration's] policy to give priority to exercise test results and their measure of function in adjudicating ischemic heart disease.... SSA recognizes, however, that such RFC, as reflected by the exercise test results, may not be retained

---

**13.** Defendants also cite regulations and other guidelines calling for consideration of work-related stress and environmental restrictions, *e.g.,* 20 C.F.R. §§ 404.1545, 416.945, as examples of the Secretary's policy of hearing evidence other than treadmill test results. These "examples"

are not particularly helpful. They do not contradict or even address plaintiff's assertion—confirmed by Drs. Weber and Bierenbaum—that claimants are being precluded from presenting medical findings to rebut treadmill test results.

where the individual is restricted by other cardiac impairments or where the claimant has any other documented limitations.

Affidavit of Barbara G. Rodbart, Nov. 15, 1985, ¶ 43. Though implying that non-treadmill evidence may be considered in RFC assessments of multiple impairments, the affidavit remains consistent with plaintiffs' position that whenever possible the evaluation of ischemic heart disease *alone* relies exclusively on treadmill results.

Similarly equivocal is the assertion that the presumptions set forth in the POMS "were intended to facilitate the adjudication of disability claims but should not take precedence over the conclusions that flow from findings of fact in a given case." *Id.* ¶ 44 (citing State Agency Memorandum 44–81 (Sept. 17, 1981)). The memorandum itself from which Ms. Rodbart paraphrases reveals that treadmill test results are the only conclusive "findings of fact" in a given case and that they are overriding when they indicate an ability to do heavy work, though other signs, such as evidence of myocardial infarction or coronary bypass may reflect a more restricted functional capacity:

> If a properly performed treadmill exercise test ... has been performed, and the results show the capacity for heavy work activity, this evidence would override any presumption [raised by a history of myocardial infarction or coronary bypass] concerning the individual's [in]ability to perform heavy work.... In no instance should guides take precedence over the conclusions that flow from findings of fact in a given case. Hence, for a claimant who has had a myocardial infarction or a coronary bypass and who has demonstrated, by a properly performed treadmill test, a capacity for heavy work, it would be appropriate and consistent with [certain POMS guidelines] to con-

clude that the individual has a nonsevere impairment.

State Agency Memorandum 44–81 (Sept. 17, 1981), *reproduced in* Defendants' Memorandum, Exh. 0 at 2. In the same interagency memorandum, Ms. Rodbart herself summarizes this policy:

> [The Social Security Administration's Central Office] advises that post-[myocardial infarction] and post-bypass surgery cases are always more than non-severe (i.e. moderate to moderately severe) and preclude heavy work *unless* subsequent treadmill testing shows a capacity for heavy work in which case the impairment would be non-severe.

*Id.* at 1 (emphasis in original).

Far from contradicting plaintiffs' contention that treadmill test results displace other relevant medical evidence in RFC assessments, these examples of the priority given to treadmill results, read in context, support plaintiffs' contention. In other words, there is no real conflict in what the parties say, and no genuine issue of material fact.[14]

Because the exclusion of evidence from RFC assessments, like the exclusion from the Listings analysis, is not genuinely in dispute, plaintiffs are entitled to partial summary judgment. *See Empire Electronics Co., supra,* 311 F.2d at 179.

## C. *Conclusion*

The Secretary's policy of giving priority to treadmill test results has resulted in the exclusion of relevant medical evidence from both the consideration of whether a claimant's impairment meets or equals the Listings and the assessment of the claimant's RFC. Enforcement of the policy has denied plaintiff subclass members their right to present such evidence in support of their disability claims. There being no genuine factual issue as to the existence of the policy, plaintiffs' motion for partial summary judgment is granted and defendants'

---

**14.** Speculation remains over the inferences to be drawn from "returns," cases returned to ODD by the Secretary with accompanying instructions for correction. The parties offer conflicting interpretations. However, such speculation does not suffice to defeat a motion for summary judgment and, in any event, in view of the lack of disagreement over the Secretary's policy as outlined above, the significance of the returns is immaterial. *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11–12 (2d Cir.1986).

cross-motion for partial summary judgment is denied.

IT IS SO ORDERED.