855 F.2d 668
 57 USLW 2144, 11 Fed.R.Serv.3d 606,
22 Soc.Sec.Rep.Ser. 698,
Unempl.Ins.Rep. CCH 14107A
 Gerald K. ADAMSON, Plaintiff-Appellant/Cross-Appellee,
v.
Otis R. BOWEN, M.D., Secretary of Health & Human Services,
Defendant- Appellee/Cross-Appellant.
 Nos. 85-2387, 85-2396.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 15, 1988.
 
 Glenn Meyers, Colorado Rural Legal Services, Denver, Colo. (Daniel M. Taubman of Colorado Coalition of Legal Services Programs, Denver, Colo., and Lisa Robinow, Alamosa, Colo., with him on the briefs), for plaintiff-appellant/cross-appellee Gerald K. Adamson.
 Edward R. Cohen, U.S. Dept. of Justice, Appellate Staff Civil Div. (Richard K. Willard, Asst. Atty. Gen., Robert N. Miller, U.S. Atty., and William Kanter, Atty., Appellate Staff Civil Div., Dept. of Justice, with him on the briefs), Washington, D.C., fordefendant-appellee/cross-appellant Otis R. Bowen.
 Before LOGAN, BARRETT and ANDERSON, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 In this action, Gerald K. Adamson brought individual and class claims against the Secretary of the United States Department of Health and Human Services. The individual claim was an appeal of the Secretary's denial of Social Security disability benefits. Despite reports supporting his claim from Adamson's treating physician, the Secretary denied Adamson's claim at all levels of administrative review. Adamson appealed this denial of benefits to the federal district court for the District of Colorado, which reversed and found Adamson totally disabled. Finding the Secretary's defense of Adamson's individual appeal to be unsupported, the district court also imposed upon the Secretary sanctions under Fed.R.Civ.P. 11 of $1775.24, representing the cost of Adamson's attorney's fees in the district court action.
 
 
 2
 Adamson also sought certification of a class action, alleging that the Secretary had an illegal policy of nonacquiescence to the law of this circuit concerning the weight to be given to the reports of treating physicians. After it had ruled in Adamson's favor on his individual claims, and at the same time that it granted Adamson's Rule 11 motion, the district court declined to certify the proposed class action.[1]
 
 
 3
 Both sides have appealed aspects of the district court's rulings. The Secretary asserts that (1) the Rule 11 sanctions are barred by sovereign immunity; and (2) if not barred, the sanctions were imposed for conduct not deserving reprimand. Adamson argues that (1) the issue of certification of the class is not mooted by the resolution of his individual claims; and (2) the district court improperly denied class certification.
 
 
 4
 * The Secretary's first argument--that imposing monetary sanctions against him under Fed.R.Civ.P. 11 violates the federal government's sovereign immunity--apparently is an issue of first impression. Unless the United States has waived its sovereign immunity, the government is immune from actions for attorney's fees. Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277-78, 77 L.Ed.2d 938 (1983). The courts have not discussed the specific issue whether the United States has waived immunity from monetary sanctions under Rule 11. Although the court in National Association of Radiation Survivors v. Turnage, 115 F.R.D. 543 (N.D. Cal. 1987), acknowledged the issue, the defendant Veterans Administration there expressly declined to assert immunity as a defense. Id. at 562. Other courts, while discussing or even awarding fee sanctions against the government under Rule 11, have not discussed the question of sovereign immunity. See, e.g., Larkin v. Heckler, 584 F.Supp. 512, 513-14 (N.D.Cal.1984) (imposing attorney's fees against Secretary of Health & Human Services); Mager v. Heckler, 621 F.Supp. 1009, 1012-13 (D.Colo.1985) (declining to impose Rule 11 sanctions against United States).
 
 
 5
 The Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412 (1981), expressly waives immunity against attorney's fee awards. Under Sec. 2412(b) of the EAJA, the United States is liable for attorney's fees "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."[2] Id. (emphasis added). This section, enacted in 1980 and remaining in force to the present,[3] would appear on its face to be sufficiently broad to waive the government's immunity from fee awards pursuant to the Federal Rules of Civil Procedure, which have "the force of a federal statute." Sibbach v. Wilson & Co., 312 U.S. 1, 13, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941). See also Rumsey v. George E. Failing Co., 333 F.2d 960, 962 (10th Cir.1964).
 
 
 6
 The legislative history of Sec. 2412(b) supports this view of the EAJA waiver. Section 5 of the original EAJA, Pub. L. No. 96-481, Sec. 205, 94 Stat. 2321, 2330 (1980), expressly addresses fees awarded pursuant to the Federal Rules of Civil Procedure and demonstrates Congress' intent that the EAJA waives government immunity. That section repealed former subdivision (f) of Fed.R.Civ.P. 37, which had disallowed awards of expenses and attorney's fees against the United States for discovery abuses. In repealing subdivision (f), Congress specified that the United States is to be treated like any other litigant in awarding discovery sanctions: "This change reflects the belief that the United States should be liable for fees the same as other parties when it abuses discovery." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 19, reprinted in 1980 U.S. Code Cong. & Admin. News 4953, 4984, 4998 [hereinafter "House Report "]. We believe that Congress through Sec. 5 manifested its broader intent that the United States be subject to fee sanctions under all of the federal rules to the same extent as private parties: Because old Rule 37(f) contained the only specific bar to such sanctions to be found in the Federal Rules of Civil Procedure, it was the only rule the EAJA needed to address specifically.
 
 
 7
 We recognize that courts must construe waivers of sovereign immunity strictly. Lehman v. Nakshian, 453 U.S. 156, 160-61, 101 S.Ct. 2698, 2701-02, 69 L.Ed.2d 548 (1981); Reynolds v. United States, 643 F.2d 707, 713 (10th Cir.), cert. denied, 454 U.S. 817, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981). Thus we consider whether Congress in Sec. 2412(b) waived the immunity of the United States only as to the common law and statutes that were in force in 1980, when Sec. 2412(b) was enacted. This question is significant because Rule 11, under which sanctions were imposed here, was amended and substantially liberalized after the enactment of Sec. 2412(b).
 
 
 8
 The language of Sec. 2412(b) contains no limitation to law existing at the time of enactment; the section merely states that the United States "shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." Id. Congress, in referring simply to the "common law" and "statutes," undoubtedly understood the shifting nature of both bodies of law and intended to encompass current law and subsequent changes.
 
 
 9
 The legislative history also supports this result by showing that Congress' key focus was that government and private litigants become and remain subject to fees and expenses in a parallel manner. The House Report states, "[T]he change [encompassed in Sec. 2412(b) ] simply reflects the belief that, at a minimum, the United States should be held to the same standards in litigating as private parties. As such, it is consistent with the history of Sec. 2412, which reflects a strong movement by Congress toward placing the Federal Government and civil litigants on a completely equal footing." House Report at 9, reprinted in 1980 U.S. Code Cong. & Admin. News at 4987 (emphasis added). The Conference Report essentially repeats the language of the House Report. H.R.Rep. No. 974, 96th Cong., 2d Sess. 25, reprinted in 1980 U.S. Code Cong. & Admin. News 4953, 5003, 5014 [hereinafter "Conference Report "]. Consequently, we conclude that Sec. 2412(b) waives sovereign immunity as to Rule 11 sanctions, including attorney's fees, against the United States.
 
 II
 
 10
 We next must determine whether the district court properly imposed Rule 11 sanctions here. Rule 11 requires sanctions against attorneys who file signed pleadings, motions or other papers in district court which are not well grounded in fact, are not warranted by existing law or a good faith argument for its extension, or are filed for an improper purpose.[4] Here the district court treated the Secretary's answer as a "signed pleading" and concluded that the "Secretary violated Rule 11 in pursuing this appeal without a scintilla of evidence to support her position. I find and conclude that her position is frivolous and that she should be required to pay attorneys' fees." I R. tab 12 at 2-3. The district court based this ruling on its earlier order reversing the "not disabled" decision of the Social Security Appeals Council.
 
 
 11
 As with other types of sanctions, the award of Rule 11 sanctions involves two steps. The district court first must find that a pleading violates Rule 11. This typically involves subsidiary findings, such as the current state of the law or the parties' and attorneys' behavior and motives within the context of the entire litigation, as well as a conclusion on the ultimate question whether the pleading violated Rule 11. The second step is for the district court to impose an appropriate sanction. The Secretary acknowledges that the district court's decision on the second step is reviewable by the court of appeals only under an abuse of discretion standard. See Cotner v. Hopkins, 795 F.2d 900, 903 (10th Cir.1986) (per curiam); Chevron U.S.A. Inc. v. Hand, 763 F.2d 1184, 1187 (10th Cir.1985).[5]
 
 
 12
 As to the first step--whether a pleading violates Rule 11--the Secretary argues that a "de novo," rather than an "abuse-of-discretion" standard applies. We recognize that other circuits have split into at least three camps on the standard in reviewing a district court's conclusion that attorney behavior has or has not violated Rule 11.[6] But we have recently clarified and affirmed that in the Tenth Circuit we apply an abuse-of-discretion standard across the board to all Rule 11 issues. Burkhart v. Kinsley Bank, 852 F.2d 512, 515, (10th Cir.1988). Thus, we consider ourselves bound to apply an abuse-of-discretion standard of review to this issue.[7] Of course, we will respect all factual findings which are necessary to the district court's conclusion, unless such findings are clearly erroneous. See Fed.R.Civ.P. 52(a).
 
 
 13
 Turning to a review of the actual sanction in this case, we ask whether the district court abused its discretion by finding that the Secretary's answer was not well grounded in fact or not warranted by existing law or a good faith argument for its extension. The standard by which courts evaluate the conduct of litigation is objective reasonableness--whether a reasonable attorney admitted to practice before the district court would file such a document. Burkhart v. Kinsley Bank, 804 F.2d 588, 589-90 & n. 3 (10th Cir.1986); Zaldivar v. City of Los Angeles, 780 F.2d 823, 829 (9th Cir.1986). If "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law ...," Eastway Construction Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir.1985) (footnote omitted), cert. denied, --- U.S. ----, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), then such conduct is sanctionable under Rule 11. The attorney must "stop, look, and listen" before signing a document subject to Rule 11. Lieb v. Topstone Industries, Inc., 788 F.2d 151, 157 (3d Cir.1987).
 
 
 14
 For the Secretary's answer to be objectively reasonable within the contemplation of Rule 11, the facts must have been sufficient to allow the Secretary to defend the agency ruling in objective good faith as being supported by "substantial evidence." See 42 U.S.C. Sec. 405(g). We may uphold a Rule 11 sanction only in the extraordinary case where the agency can make but one decision in good faith: to concede the merits of the administrative claim.
 
 
 15
 It should be a rare case indeed when a winning party in the district court is sanctioned for defending that judgment on appeal. But sanctions may be warranted less rarely when the initial victory was within an administrative agency and that agency defends the appeal. We hold that the situation before us is such an unusual case, that the district court did not abuse its discretion by concluding that the agency's ruling was so lacking in evidentiary support that the Secretary should have conceded the merits of Adamson's complaint. The administrative record, all of which was available to the Secretary at the time the answer was filed with the district court, presents overwhelming evidence of Adamson's disability. We might take issue with the district court's factual conclusion that the Secretary's defense of this action lacked even a "scintilla of evidence" to support it. However, the little evidence that supports the Secretary's position is indeed tenuous, particularly when balanced against the overwhelming evidence supporting Adamson's claim.
 
 
 16
 The whole record shows Adamson to be severely disabled; he suffers from emphysema, back and leg pains, color blindness, and cannot use his left hand. His former job as dispatcher, upon which the ALJ had based his conclusion that Adamson could return to a prior job, had been created by Adamson's former employer to accommodate his multiple handicaps. The nature of this position--Adamson worked from his home for only two to four hours per day, scattered throughout the day--suggests strongly that similar positions with other employers would be nearly impossible to find. Adamson's radio business regularly operated at a loss; we agree with the district court that the ALJ's attempt to show, through tax records, that it represented a viable business was "cursory and misguided." I R. tab 8 at 2. Finally, the record is clear that Adamson could not properly perform either the dispatching or radio job on his own; in both occupations, he relied on his wife for aid. II R. 79 (assistance with paperwork of dispatcher's job); II R. 80 (assistance in identifying colors on radio wires since claimant is color-blind).
 
 
 17
 When evidence supporting the Secretary is so slight and the contrary evidence so overwhelming, a reasonable attorney for the Secretary could not have concluded that the minimal supporting evidence constituted the "substantial evidence" needed to affirm the administrative decision under 42 U.S.C. Sec. 405(g). Thus, the Secretary objectively could not have believed the position taken here to be "well-grounded in fact," as Rule 11 requires.
 
 III
 
 18
 Adamson argues, in his appeal, that the district court i properly ruled that the claims of the named plaintiffs were moot, and that the district court denied class certification on this ground. We agree with the Secretary, however, that the district court's denial of class certification was not for mootness, but rather was for failure of common questions to predominate. Nonetheless, we address this question because the issue of mootness relates to whether a continuing case or controversy exists, and hence to our power under Article III of the United States Constitution to review the class certification issue. Sosna v. Iowa, 419 U.S. 393, 398, 95 S.Ct. 553, 556-57, 42 L.Ed.2d 532 (1975).
 
 
 19
 The mootness doctrine requires that a live controversy continue to exist between defendant and at least some of the proposed class members. United States Parole Commission v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208-09, 63 L.Ed.2d 479 (1980). Evidence of such a live controversy of course may exist from the named plaintiff's continuing dispute with defendant over the outcome of the lawsuit. In addition, evidence that the issues remain live may appear from the attempted intervention of unnamed class members. Id. In the instant case, the fact that individuals allegedly affected by the Secretary's policy of nonacquiescence sought to intervene, see supra, note 1, sufficiently shows a live controversy concerning the class claims.
 
 
 20
 The mootness doctrine also requires that the parties before the court have a "personal stake" in the outcome of the litigation. Geraghty, 445 U.S. at 403-04, 100 S.Ct. at 1212-13. Although the district court ruled in Adamson's favor on the merits of his individual claim before it denied the class certification, his Rule 11 motion for attorney's fees remained pending. This stake in attorney's fees keeps the case from becoming moot. Cf. Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 334 n. 6, 100 S.Ct. 1166, 1172 n. 6, 63 L.Ed.2d 427 (1980) (desire to shift portion of costs already incurred to class litigants supports personal stake requirements). We therefore hold that this appeal of the denial of class certification is not moot despite the earlier satisfaction by judgment of Adamson's claims on the merits against the Secretary.
 
 IV
 
 21
 Adamson's principal argument is that the district court erred in denying class certification under Fed.R.Civ.P. 23(a) and (b)(2). The complaint alleged[8] that the Secretary had a policy of disregarding Tenth Circuit rulings establishing the proper weight to be given to treating physicians' reports,[9] and that this policy of nonacquiescence violated the Social Security Act, the class members' due process rights, and the constitutional doctrine of separation of powers. The complaint sought declaratory and injunctive relief for the class.
 
 
 22
 The standard for certifying a class action appears in Fed.R.Civ.P. 23. Initially, the district court must determine whether the four threshold requirements of Rule 23(a) are met.[10] If the court determines that they are, it must then examine whether the action falls within one of three categories of suits set forth in Rule 23(b). When the district court has applied the proper standard in deciding whether to certify a class, we may reverse that decision only for abuse of discretion. Peterson v. Oklahoma City Housing Authority, 545 F.2d 1270, 1273 (10th Cir.1976).
 
 
 23
 A review of the district court's order reveals that it applied an improper standard in the instant case. In concluding that the class did not satisfy the commonality and typicality requirements of Rule 23(a), the district court referred to the requirement of Rule 23(b)(3) that common questions predominate. The court's order states:
 
 
 24
 "Under Fed.R.Civ.P. 23(a)(2), a class action can only be maintained if 'there are questions of law or fact common to the class.' Moreover, under Fed.R.Civ.P. 23(b)(3), the court must find that 'the questions of law or fact common to the members of the class predominate over any questions affecting only individual members.' "
 
 
 25
 I R. tab 12 at 1. Although Rule 23(a) requires the district court to find that common questions of law or fact exist, only in class actions sought to be certified under Rule 23(b)(3) must such questions predominate. Here plaintiff's complaint, properly construed, sought relief under Rule 23(b)(2), which contains no requirement of "predominance."[11] The district court placed upon the class a burden that the rule does not authorize.
 
 
 26
 In a similar case, Yaffe v. Powers, 454 F.2d 1362 (1st Cir.1972), plaintiffs brought a Rule 23(b)(2) class action seeking declaratory and injunctive relief from certain police surveillance tactics. The district court, in denying certification, relied in part on its conclusion that common questions did not predominate. Id. at 1365. In reversing, the First Circuit defined the district court's error as "applying the criteria set out in subdivision (b) of Rule 23 cumulatively rather than alternatively," id. at 1366; the court ordered the district court to reopen the issue of class certification.
 
 
 27
 In the instant case, the remedies the class seeks--declaratory relief and an injunction directing the Secretary to follow the proper law of this circuit--do not depend on the individual facts of each case, but apply equally to all cases pending within the class. That the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy. See, e.g., Liberty Alliance of the Blind v. Califano, 568 F.2d 333, 346-47 (3d Cir.1977).
 
 
 28
 Further, differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory. See, e.g., Milonas v. Williams, 691 F.2d 931, 938 (10th Cir.1982), cert. denied, 460 U.S. 1069, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983); Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1189 (10th Cir.1975); 7A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure Sec. 1764 at 243 (1986). Final resolution of named plaintiff Adamson's claims for social security benefits and attorney's fees may render his claims no longer typical of those of the class, but it does not require the class claims to be dismissed. If the district court considers Adamson no longer an adequate class representative under Rule 23(a)(4), it should consider intervention by other members of the proposed class or the addition of a named plaintiff who would satisfy the requirements of typicality and adequacy of representation. See Geraghty, 445 U.S. at 407, 100 S.Ct. at 1214; Kremens v. Bartley, 431 U.S. 119, 130-35, 97 S.Ct. 1709, 1715-18, 52 L.Ed.2d 184 (1977). Because plaintiffs are represented by a legal services agency challenging a broad, continuing policy, there likely "are other legal services clients with a continuing live interest in the case who can represent the class if necessary for certification." Reed v. Heckler, 756 F.2d 779, 786 n. 9 (10th Cir.1985).
 
 
 29
 Finally, in making the class certification determination on remand, the district court should avoid focusing on the merits underlying the class claim. In presenting their arguments to this court, the parties expended substantial energy in controverting the merits--whether the Secretary has an illegal policy of nonacquiescence to clear Tenth Circuit law. Although the court may ultimately need to reach this question, it is not germane to the question of certification. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974) ("[N]othing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"); Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir.1982) (inquiry into likelihood of prevailing on claim inappropriate to analysis of class certification).[12]
 
 V
 
 30
 Possibly anticipating our ruling on class certification, the Secretary offers two alternative grounds for upholding the class certification ruling.
 
 
 31
 First, the Secretary argues that plaintiff's claim is not ripe because no explicit Social Security Administration policy of nonacquiescence has issued pursuant to its policy-making apparatus as described in Interim Circular 185, "Applicability of Circuit Court Decisions at Administrative Law Judge and Appeals Council Levels." Opening Brief of Appellee at 24 n. 25. We disagree. If, as plaintiff asserts, see I R. tab 9 at p 3 (Plaintiff's Third Amended Complaint), the Secretary followed and will continue to follow a policy of nonacquiescence below the ALJ and Appeals Council levels, which policy the Circular does not alter, cf. Stieberger v. Bowen, 801 F.2d 29, 36 (2d Cir.1986), the plaintiff clearly challenges a fo malized decision not to acquiesce in circuit law which concretely affects claimants. Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515-16, 18 L.Ed.2d 681 (1967). Further, Adamson challenges the practices as well as the regulations and policies of the Secretary, thus obviating a formal ruling of nonacquiescence pursuant to Interim Circular 185. See I R. tab 9 at p 1. Cf. Stieberger, 801 F.2d at 36. We therefore reject the Secretary's ripeness argument.
 
 
 32
 Second, the Secretary argues that the class improperly included individuals who had not exhausted their administrative remedies or who had received final decisions on their claims more than sixty days before the filing of the instant suit. Without those improperly included class members, the Secretary argues, the class would not satisfy the numerosity requirement of Rule 23(a)(1). Consideration of this argument is best left to the district court, which in its earlier order did not explicitly address numerosity in rejecting class certification. We note, however, that the Supreme Court's ruling in Bowen v. City of New York, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), substantially undermines the Secretary's exhaustion and sixty-day limitations period arguments. See id. at 478-82, 106 S.Ct. at 2029-31 (rejecting argument based on failure to file court action within sixty days of final administrative decision); id. at 482-86, 106 S.Ct. at 2031-33 (rejecting argument based on failure to exhaust administrative remedies).
 
 
 33
 We AFFIRM the imposition of Rule 11 sanctions, VACATE denial of class certification, and REMAND to consider anew class certification.
 
 
 
 [1]
 Because the Secretary had ruled in favor of a second named plaintiff, Felix Gallegos, the district court dismissed Gallegos' action, which dismissal Gallegos has not appealed. Colin Hamilton and Clarence Rousey both filed motions to intervene in the class action which the district court denied and which also are not before us on appeal
 
 
 [2]
 The full text of Sec. 2412(b) reads as follows:
 "Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."
 
 
 [3]
 In proceedings before the district court, plaintiff initially prayed for EAJA sanctions. In response, the Secretary asserted that any sanction under the EAJA would be improper because that statute had lapsed on October 1, 1984, before the October 17, 1984, commencement of this action. The Secretary's assertion is in error for two reasons. First, only subsection (d) of Sec. 2412 lapsed on October 1, 1984. Pub.L. No. 96-481, Sec. 204(c), 94 Stat. 2321, 2329 (1980). Second, Congress subsequently revived that section and specified that it be treated as if it had remained in effect without interruption from the date of its initial enactment. Pub. L. No. 99-80, Secs. 6(a), 7(b), 99 Stat. 183, 186. See H.R.Rep. No. 120, 99th Cong., 1st Sess., pt. 1, at 20-21, reprinted in 1985 U.S. Code Cong. & Admin. News 132, 149-50
 As plaintiff could not apply for fees under Sec. 2412(d)(1)(A) until thirty days after final judgment in this action, see Sec. 2412(d)(1)(B), we do not here review the sanctions under the standard set forth in Sec. 2412(d).
 
 
 [4]
 The rule provided, at the time Adamson moved for sanctions, in relevant part that
 "Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."
 Fed.R.Civ.P. 11 (1986).
 
 
 [5]
 All other circuits which have faced the question agree with Cotner and Chevron that the choice of an appropriate sanction is entrusted to the district court's sound discretion. See, e.g., Thomas v. Capital Security Services, Inc., 836 F.2d 866, 878 (5th Cir.1988) (en banc); Brown v. Federation of State Medical Boards of the United States, 830 F.2d 1429, 1434 (7th Cir.1987); Donaldson v. Clark, 819 F.2d 1551, 1557 (11th Cir.1987) (en banc); INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc., 815 F.2d 391, 401 (6th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987); Lieb v. Topstone Industries, Inc., 788 F.2d 151, 157 (3d Cir.1986); Zaldivar v. City of Los Angeles, 780 F.2d 823, 828 (9th Cir.1986); Westmoreland v. CBS, Inc., 770 F.2d 1168, 1175 (D.C.Cir.1985); Eastway Construction Corp. v. City of New York, 762 F.2d 243, 254 n. 7 (2d Cir.1985), cert. denied, --- U.S. ----, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); Kurkowski v. Volcker, 819 F.2d 201, 203 n. 8 (8th Cir.1987)
 
 
 [6]
 Some of the circuits have adopted a unitary abuse-of-discretion standard for all aspects of a district court's Rule 11 analysis. See Thomas v. Capital Security Services, Inc., 836 F.2d 866, 872-73 (5th Cir.1988) (en banc); Century Products, Inc. v. Sutter, 837 F.2d 247, 253 (6th Cir.1988); EBI Inc. v. Gator Industries, Inc., 807 F.2d 1, 6 (1st Cir.1986); Stevens v. Lawyers Mutual Liability Insurance Co., 789 F.2d 1056, 1060 (4th Cir.1986). Cf. Snow Machines, Inc. v. Hedco, Inc., 838 F.2d 718, 724-25 (3d Cir.1988)
 Among those circuits which apply the de novo standard, there are some differences in approach. The first variation of the de novo theme is known popularly as the "three-tier" standard since it breaks down Rule 11 analysis into three levels: (a) reviewing for clear error the district court's factual findings that given behavior occurred; (b) reviewing de novo the legal conclusion whether that behavior constitutes a Rule 11 violation; and (c) if a violation is found, reviewing for abuse of discretion the district court's choice of an appropriate sanction. See Brown, 830 F.2d at 1434 (7th Cir.); Kurkowski, 819 F.2d at 203 n. 8 (8th Cir.); Zaldivar, 780 F.2d at 828 (9th Cir.). The Second Circuit also applies de novo review but has not defined its standard in such detail; it exercises plenary review over an allegation that "in fact, a pleading was groundless ...," but it has not established a standard of review for pleadings which are groundless as a matter of law or are interposed for an improper purpose. See Eastway, 762 F.2d at 254 n. 7.
 Some courts take either a de novo or an abuse-of-discretion approach, depending on the type of Rule 11 violation alleged. These circuits apply de novo review to allegations that a pleading was not well grounded in existing law or supported by a good faith argument for its extension, modification, or reversal; but they review for abuse of discretion if the pleading is alleged to be either not well grounded in fact or interposed for an improper purpose. See Donaldson, 819 F.2d at 1556 (11th Cir.); Westmoreland, 770 F.2d at 1174-75 (D.C.Cir.).
 
 
 [7]
 The Supreme Court recently ruled that an abuse-of-discretion standard of review governs the determination whether the litigation position of the United States is "substantially justified" under the EAJA. Pierce v. Secretary of Housing and Urban Development, --- U.S. ----, ----, 108 S.Ct. 2541, 2546-49, 101 L.Ed.2d 490 (1988). Many of the reasons advanced by the Court in Pierce are equally persuasive in the Rule 11 context
 
 
 [8]
 The complaint asked the court to certify a class of Tenth Circuit residents "who have filed or will file applications for Social Security Title II disability benefits ... or SSI disability benefits, who have had or will have their claims for disability benefits evaluated by the Defendant under the Defendant's regulations, policies, and practices, who have been or will be found not disabled by Defendant ... and in which the [Tenth Circuit] standard ... concerning the weight given to treating physicians' opinions was not applied." Plaintiff's Third Amended Complaint, I R. tab 9 at p 11
 
 
 [9]
 In the complaint and supplementary filings before this court, Adamson cited eleven cases which, he asserts, state a circuit rule that the Secretary must give substantial weight to the opinions of treating physicians. See, e.g., Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.1987) (stating "well-established rule in this circuit"). According to Adamson, these cases establish a clear rule of law to which the Secretary refused to acquiesce as a matter of policy. Whether the Secretary indeed followed an illegal policy of nonacquiescence to this rule is a matter upon which we express no opinion. That is for the district court to consider in evaluating the merits of the class claim
 
 
 [10]
 These specify that
 "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
 Fed.R.Civ.P. 23(a).
 
 
 [11]
 For a class to be proper under Rule 23(b)(2), the district court must find that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."
 
 
 [12]
 We do not mean to infer by this discussion that the district court should grant class certification. In appropriate cases the court can use an accelerated summary judgment procedure before class certification to test the plaintiff's right to proceed to trial. 7B C. Wright, A. Miller & M. Kane, Federal Practice & Procedure Sec. 1785 at 127 (1986). Additionally, the merits may become intertwined with proper consideration of other issues germane to whether the case should be certified as a class action; for example, whether an injunction would be a more efficient and equally effective remedy. See id. Sec. 1785.2. Furthermore, somewhat similar litigation is going on in other districts, see Schisler v. Bowen, CIV-80-572E (W.D.N.Y.), and Stieberger v. Bowen, CIV-84-1302 (LBS) (S.D.N.Y.); thus, it may be that a nationwide class action is already in effect rendering the requested relief in this case moot for practical purposes, except for subsidiary questions with respect to retroactive effect