**In re Charles Francis PULLARA, SS# 522–52–7880, Carol Ann Pullara, SS# 524–62–5518, Debtors.**

**Bankruptcy No. 95–22489 CEM.**

United States Bankruptcy Court,
D. Colorado.

Aug. 22, 1996.

James M. Croshal, Gradisar, Trechter, Ripperger & Croshal, Pueblo, Colorado, for Debtors.

## ORDER FOR SANCTIONS

CHARLES E. MATHESON, Chief Judge.

Administration of matters under the Bankruptcy Code is simplified by the procedural expedient of presenting matters to the Court "after notice and a hearing." As specified, this phrase, when it appears in the Code, authorizes action to be taken without the necessity of convening an actual hearing if notice is given and if a hearing is not requested timely by a party in interest. 11 U.S.C. § 102(1)(B). In the District of Colorado, this phrase is implemented by Local Bankruptcy Rule 202 ("L.B.R. 202"). Pursuant to that rule, a movant may file a motion and give notice as required. If there is no objection by a party in interest, the movant submits to the Court a Certificate of Non–Contested Matter in which the movant certifies that the motion and notice thereof were properly served and that there has been no response, and submits a form of order for the requested relief. L.B.R. 202(d).

Local Bankruptcy Rule 202 is not a replacement for Fed.R.Bankr.P. 9011 ("Rule 9011"). Parties who file pleadings in this Court remain subject to the strictures of Rule 9011 when they file motions and seek relief, whether or not there is any objection by an opposing party. However, L.B.R. 202 lends itself to the practice of filing a motion for any kind of relief, whether justified or not, and giving notice all in the hope that, if no objection is received, counsel will be able to fly an order by the Court. Unfortunately, and to the credit of neither counsel nor the Court, in the mass of paper flowing through the Court, it can happen that an unjustified and unwarranted order may get entered. Such is the present case.

The Debtors in this case filed bankruptcy in November 1995. Their petition asserts that they then resided at 402 Hwy. 50 East, Avondale, Colorado (the "Avondale" property). Their schedules disclosed that they owned a single-family residence at that address and that they also owned 10 acres of ground, improved by a single-family residence, at 37151 South Road, Pueblo, Colorado (the "Pueblo" property). Notwithstanding their explicit representation in their petition that they resided at the Avondale property, the Debtors asserted a right to a homestead exemption in the Pueblo property. Both properties were substantially encumbered.

At the 341 meeting, the case trustee discussed the real property with the Debtors. As a result of that meeting a stipulation was entered into, signed by the Debtors and their counsel and approved by the Court. The stipulation provided:

> Debtors shall turn over to estate and Trustee any net profit from sale of real property on South Road [the Pueblo property] in Pueblo, Colorado *with no claim of exemption.* (Emphasis added).

Three months later, counsel for the Debtors filed with the Court a "Motion to Determine Value of Creditors' Liens." In that motion it is represented to the Court and the creditors that the Debtors reside at the Pueblo property and have a valid claim of homestead therein. It is alleged that the property is encumbered by two consensual liens, a judgment lien and a federal tax lien; that the value of the property does not exceed the value of the first consensual lien plus the homestead; and prays that the second consensual lien, the tax lien and the judgment lien should be valued at zero. Notice pursuant to L.B.R. 202 was given. The only response came from the Internal Revenue Service which asserted that the federal tax lien could not be voided pursuant to 11 U.S.C. § 522(f). Counsel for the Debtors thereupon submitted a Certificate of Non–Contested Matter and an order valuing at zero the consensual lien and the judgment lien. No further relief was sought as to the tax lien. The tendered order was, unfortunately, entered.

Approximately a year later, counsel for the Debtors filed a similar motion addressing a judgment lien apparently overlooked in the first motion. Again, notice was given and there was no objection filed, at which time a Certificate of Non–Contested Matter was filed and an order tendered. This time the deficiencies were not overlooked by the Court and a hearing was set at which time the requested relief was denied. At the same time the Court directed counsel for the Debtors to show cause in writing why sanctions ought not to be imposed for the filing of the motions and their prosecution. That is the matter now before the Court.

■■ Rule 9011 is, or should be, familiar to every practitioner. That Rule specifies that the signature of an attorney on a pleading

> constitutes a certificate that the attorney ... has read the document; that to the best of the attorney's ... knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law ..; and that it is not interposed for any improper purpose....

If the Court finds that the Rule has been violated, sanctions must be imposed.

■ The standard established by Rule 9011 is an objective one. The question is, what would a reasonable attorney do under the circumstances? *White v. General Motors Corp., Inc.,* 908 F.2d 675 (10th Cir.1990). It is meant to impose on counsel the need to "stop, look and listen" before signing and filing documents. *Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir.1988) citing *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 157 (3rd Cir.1986).

The relief sought by counsel by way of the two filed motions was clearly not available. Counsel acknowledges, in his response to the Court's order to show cause, that, while the motions do not cite any authority for their requested relief, he was relying on 11 U.S.C. § 506(a). That provision of the Code has to do with valuing the allowed amount of a secured claim. It does not, in any way, provide for the possible voiding of liens. If any support can be found in section 506 for the voiding of liens, it must be found in section 506(d). However, as we know, the Supreme Court has explicitly held that section 506(d) cannot be utilized by a Chapter 7 debtor to write down the amount of liens against the debtor's property or to void any such liens. *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

It is noteworthy that, although counsel now cites section 506 as his supposed legal authority for his motion, when the Internal Revenue Service filed its objection to the motion, it stated that a tax lien cannot be avoided under the provisions of 11 U.S.C. § 522(f), which is absolutely correct. However, avoidance under section 522 was, ap-

parently, not being sought. Nevertheless, when counsel submitted his request for the entry of an order he did not further challenge the IRS lien.

Counsel now admits the error of the motion, at least as to the consensual lien and the tax lien. He argues, however, that relief was justified as to the judgment liens pursuant to section 522(f).

There are several responses to counsel's argument as to the judgment liens. First, the Court notes that the Tenth Circuit has made it clear that Rule 9011 applies to any specious claim that may be made in a pleading, even if some of the claims may have validity. *Dodd Ins. Services, Inc. v. Royal Ins. Co. of America*, 935 F.2d 1152, 1158 (10th Cir.1991). Here, because of *Dewsnup*, there was no basis of any kind for counsel to seek the requested relief as against the consensual lien and the tax lien. Even section 522(f) does not give the debtors the ability to void such liens. Of greater concern to the Court are the assertions made concerning the validity of the homestead claim.

■ As has been discussed above, all evidence from the file belies the existence of a valid homestead claim in the first instance as to the Pueblo property. In order to claim the homestead, the debtors must be residing at the property and using it as their residence at the time the petition is filed. See, e.g. *In re Raymond*, 987 F.2d 675 (10th Cir.1993). The petition in this case indicates the Debtors were residing at the Avondale property, which is consistent with their historical residential address. If so, no claim of exemption was available to the Debtors as to the Pueblo property. Then there is the matter of the stipulation with the Trustee.

Counsel argues that the stipulation was entered into out of the Trustee's concerns that the Debtors might sell both properties. This stipulation, however, only references the Pueblo property. It is easy to understand the reason for the stipulation from the Trustee's standpoint. There was no apparent equity in either property, especially if the Debtors had a valid claim of homestead. There was no purpose to be served in objecting to the claimed Pueblo homestead exemption if doing so was not going to bring anything into

the estate, which was the apparent state of affairs. On the other hand, the Trustee did not want the Debtors walking away with the property and realizing a windfall from the sale of the ten acres. Thus, the stipulation pursuant to which the Debtors made clear that they would not assert a homestead claim in the event of the sale of the Pueblo property.

It is true that the Trustee never objected to the claimed homestead. Because of the terms of the stipulation, there was no need for him to do so. Counsel argues that because there was no objection to the homestead claim, it was proper for him to argue in his motions that the Debtors had a valid homestead claim, thereby supporting his section 522(f) argument. Lost in this rhetoric is the more troublesome fact that the Debtors' claim of homestead had little or no validity in the first instance (evidenced by their willingness to agree, in the stipulation, to not assert an exemption claim against the estate in the event they sold the property). If counsel was ignorant of *Dewsnup*, it appears that he is certainly aware of *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) which allows unscrupulous debtors to slip unwarranted exemption claims by unwary creditors.

Counsel argues confusion regarding the law on "stripping down" liens because of his practice in Chapter 11 and 12 cases. Certainly counsel is an experienced bankruptcy practitioner and he is obligated to know the law. Here, we are not dealing with an obscure bankruptcy court decision barring the requested relief, but with a recent decision of the United States Supreme Court. Indeed, it is one of the most significant decisions in this area in this decade, and one which has been much discussed by the commentators. The Court would further observe that, out of concern for the ability of practitioners to stay current on the law, the undersigned judge regularly conducts free seminars in Denver at which cases such as *Dewsnup* are discussed. Mindful of the difficulty of attorneys in the outlying counties being able to attend such seminars, the judge prepares a written outline of the cases which is available to be sent to any attorney requesting a copy. The

seminar notes of February 10, 1992, evidence that the *Dewsnup* opinion was prominently featured and discussed.

In the final analysis, counsel simply argues that he was guilty of a good-faith mistake. He just forgot, although he acknowledges that he read *Dewsnup* when it was decided. Such is not an acceptable response. The claim of innocence here is colored by the other factors discussed above, all reflecting on the unavailability of the requested relief.

The practice of submitting a "flyer" under L.B.R. 202 cannot be countenanced. It is a particularly pernicious practice which smacks of deceit on the Court, calculated to take advantage of a busy judge. The filing of the instant motions have delayed the administration of this estate and have diverted judicial attention to matters which do not warrant relief. The submission of a motion and a request for the entry of an order under the circumstances here presented are acts for a clearly improper purpose which mandate the imposition of sanctions.

The Tenth Circuit has set the standard for sanctions. This Court is to consider factors such as the offending party's history, experience and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances. *White, supra.* The Court must also fix the sanctions in the minimum amount necessary to deter future misconduct. *White, supra.*

This is not the first time this Court has had the occasion to sanction this attorney. He is, as stated above, a practitioner who appears before this Court with some regularity. His own arguments acknowledge his practice in the more complex areas of Chapters 11 and 12. The violation is severe because, as the Court has observed, it smacks of deceit on the Court itself. It is a type of practice which must be chilled.

In its order to show cause, the Court fixed the maximum sanction as being not more than $1,000 for each motion. Counsel argues that such is an excessive and burdensome amount.

Counsel received a nominal fee in this case of $500. He does not have a wealthy practice. It is difficult for the Court to determine what the minimum amount might be to deter the kind of conduct here involved. One would have thought that being sanctioned once, by any court, would have had a chilling effect for a lifetime, but such is not the case. Given counsel's modest practice, a sanction of $2,000 might be burdensome. A sanction of less than $1,000 would, in this Court's view, be ineffective. Accordingly, it is

ORDERED, that James M. Croshal, Esq., is sanctioned in the amount of $1,000, with such amount to be paid to the Clerk of this Court within twenty (20) days from the date of entry of this order, failing which an order will enter without further notice barring Mr. Croshal from appearing in any matter in this Court unless and until such time as the sanctions are paid.