**In re RIBOZYME PHARMACEU- TICALS, INC. SECURITIES LITIGATION.**

Nos. CIV. A. 99–B–2235, CIV. A. 99–B–2423, CIV. A. 00–B–02, CIV. A. 00–B–017.

United States District Court, D. Colorado.

May 1, 2000.

Robert F. Hill, John F. Walsh, Hill & Robbins, PC, Denver, CO, for Plaintiff/Petitioner.

Frederick J. Baumann, Rothgerber Johnson & Lyons, LLP, Denver, CO, David M. Furbush, Brobeck, Phleger & Harrison, LLP, Palo Alto, CA, for Defendant/Respondent.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This Order comes upon cross-motions for appointment of lead plaintiffs and lead counsel. Oral argument was heard on April 20, 2000. For the reasons set forth below, I grant the "Ribozyme Shareholders Group's" motion for appointment of lead plaintiffs and lead counsel. The lead plaintiffs, therefore, are Mark Adler, Mitchell Gilbert, Barbara Brierre, and David Fasse/Jaqueline Jackson (jointly). Accordingly, I deny the motion of the "Ribozyme Lead Plaintiffs."

### I. Background

This is a class action on behalf of all persons who purchased or otherwise acquired the common stock of Ribozyme Pharmaceuticals, Inc. ("Ribozyme") between the close of trading on November 15, 1999, and the close of trading on November 17, 1999. The Plaintiffs claim that an "overstated," "misleading," and "premature" November 15 press release artificially raised the price of Ribozyme shares on November 16, 1999. The press release addressed a drug developed by Ribozyme called Angiozyme(TM). As a result of Ribozyme's allegedly deceptive and illegal conduct, Plaintiffs purchased the shares at grossly inflated prices. Had they been aware of the company's true condition, they allege they would have bought no shares at all. The price of Ribozyme's common stock plummeted from a class period high of $22 per share to $9.3125 per share. Plaintiffs bring the following claims for relief: violation of § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder; and violation of § 20(a) of the Exchange Act against Defendant Christoffersen.

Two groups of plaintiffs move to be appointed lead plaintiffs and for approval of their selected lead counsel. The first group, self-titled "Ribozyme Lead Plaintiffs," is represented by Dyer Donnelly and Wolf Haldenstein, and is comprised of two plaintiffs: John Heisey and Ron Ishibashi. The second group, self-titled "Ribozyme Shareholders Group," is represented by Hill & Robbins, Harold B. Obstfeld, and Beatie and Osborn. This second group is made up of four named members: Mark Adler, Mitchell Gilbert, Barbara Brierre, and David Fasse/Jaqueline Jackson (jointly).

### II. Requirements for Appointment of Lead Plaintiffs

Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), establishes a procedure that governs the appointment of lead plaintiffs in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(1).

First, the plaintiff who files the initial action must publish notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff(s). 15 U.S.C. § 78u–4(a)(3)(A)(i). Here, the plaintiff in the *Adler* action published the notice on November 23, 1999. Within 60 days after this publication, any person or group of persons who are members of the proposed class could apply to the Court for appointment as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u–4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days of publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class

members. 15 U.S.C. § 78u–4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides the following rebuttable presumption:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
>
> . . . .
>
> The presumption described . . . may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u–4(a)(3)(B)(iii).

## A. Both Plaintiff Groups Satisfy the Requirements Under the PSLRA §§ (aa) and (cc) and Rule 23

The time period in which class members may move to be appointed lead plaintiffs expired on January 21, 1999. Both plaintiff groups timely moved for appointment. Furthermore, both groups have signed sworn certifications stating that they have reviewed the complaints and are willing to serve as representative parties on behalf of the class. Both groups have also selected and retained experienced and competent counsel to represent them and the class. All firms involved submitted their "resumes" and show that they are highly competent to undertake these matters. Neither group contests that the other group has not satisfied the rebuttable presumption requirement of subsection (aa).

Likewise, neither group contends that the other group has not satisfied the requirement of subsection (cc), invoking Rule 23.

According to the PSLRA, the lead plaintiffs must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a). Of these four prerequisites to class certification, only two—typicality and adequacy—directly address personal characteristics of a class representative. In deciding a motion to serve as lead plaintiffs, I limit my inquiry to these final two prongs of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiffs move for class certification. *See, e.g., Lax v. First Merchants Acceptance Corp.,* 1997 WL 461036, at \*6 (N.D.Ill.1997); *Fischler v. AmSouth Bancorp.,* 1997 WL 118429, \*2 (M.D.Fla.1997) ("This inquiry, therefore, focuses on the qualities of the class representatives enumerated in 23(a)(3) and 23(a)(4), that is, typicality and adequacy.").

Under Rule 23(a)(3), the claims of the representative parties must be typical of those of the class. Typicality exists where the "injury and the conduct are sufficiently similar." *See Bayles v. American Medical Response of Colorado, Inc.,* 950 F.Supp. 1053, (D.Colo.1996) (citing *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988)). In addition, "differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based upon the same legal or remedial theory." *See id.* (citing *Adamson,* 855 F.2d at 676). Both plaintiff groups satisfy this requirement because, like all other class members they: (1) purchased Ribozyme stock during the relevant time period; (2) at prices that they allege were artificially inflated by the false and misleading statements issued by defendants; and (3) they allegedly suffered damages. Both plaintiff groups' claims are typical of those of

other class members since they arise from the same event or course of conduct.

Finally, under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." Like typicality, neither plaintiff group maintains serious arguments that the other group is inadequate. The PSLRA directs courts to limit its inquiry regarding adequacy to the existence of any conflicts between the interests of the proposed lead plaintiffs and the members of the class. *See Fischler*, 1997 WL 118429, at *3. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *See Modell v. Eliot Savings Bank*, 139 F.R.D. 17, 23 (D.Mass.1991) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985)). Here, both plaintiff groups are adequate representatives of the class. There is no evidence of any antagonism between the interests of the plaintiff groups and those of the other class members. Both sides have retained respected and experienced counsel that will vigorously conduct the litigation. Both groups are adequate under Rule 23.

## B. The "Largest Financial Interest in the Relief Sought by the Class"

The dispute in this case centers on which group has the largest financial interest in the relief sought. The "Ribozyme Lead Plaintiffs" (led by Mr. Heisey and Mr. Ishibashi) calculate their financial interest in the traditional and most common manner called "retention value." Under this method, they have suffered losses of $75,093. The Ribozyme Shareholders Group, in their initial filing, also calculated their losses using the retention value method. Under this method, the losses of the four named members of the group, the "executive committee," total $53,-428 and the loses of all 60 shareholders in their group totals $210,368.54. In subsequent filings, the Ribozyme Shareholders Group contends that losses should not be calculated under the retention value method,

but instead should be calculated in the manner that damages are calculated under the PSLRA. Under this method, they argue that they have suffered greater losses than the "Ribozyme Lead Plaintiffs."

### 1. Retention Value

■ Neither group disputes the general proposition that a group of persons may combine their losses to create "the largest financial interest" for purposes of the PSLRA. *See, e.g., In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 350 (S.D.Cal. 1998) ("the majority of courts confronted with this issue have permitted plaintiffs to aggregate their losses for purposes of the lead plaintiff determination."). However, the "Ribozyme Lead Plaintiffs" argue that the Shareholders Group should not be allowed to pool the losses of all 60 of its members. To the extent that the Shareholders Group raised this argument in its pleadings, I agree.

Courts have ruled that counsel may not aggregate large groups of class members in order to form a group with the largest financial interest. *See, e.g., In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216–217 (D.D.C.1999). Rather, when determining which group has the largest financial interest, courts may only look to the losses sustained by the class members actually being put forward by any particular group to act as lead plaintiffs.

■ *In re Baan* rejected aggregation of class members for the purpose of determining which group has the largest financial interest. In *Baan*, the court rejected the proposed lead plaintiff group because it had 20 members. This court found that the lead plaintiff group should be limited to no more than three to five members. *See In re Baan*, 186 F.R.D. at 216–217 (citing *In re Advanced Tissue Sciences*, 184 F.R.D. at 346 (winnowing proposed group of 250 to six); *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 408–09 (D.Minn.1998) (winnowing plaintiff group of almost 300 to six); *Zaltzman v. Manugistics Group, Inc.*, No. S–98–1881, Mem. Op. and Or. at 9–14 (D.Md. Oct. 8, 1998) (rejecting proposed 92–member plaintiff group and picking two with largest losses)). The Securities Exchange Commission

has also weighed in against aggregation of more than three to five class members in each group:

> Construing the term 'group of persons' in light of the language and purposes of the Act, a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers. The Commission believes that ordinarily this should be no more than three to five persons, a number that will facilitate joint decisionmaking and also help to assure that each group member has a sufficiently large stake in the litigation.

*In re Baan,* 186 F.R.D. at 216–217 (citing SEC Mem. at 16–17). *But see D'Hondt v. Digi Intern., Inc.,* 1997 WL 405668 (D.Minn. 1997) (appointing 21 lead plaintiffs and 3 lead counsel); *Nager v. Websecure, Inc.,* 1997 WL 773717 (D.Mass.1997) (appointing 10 lead plaintiffs and 3 lead counsel; appointment was unopposed). I limit the Shareholders Group's 60 proposed lead plaintiffs to the four named members of the proposed "Executive Committee" for purposes of this determination. Counsel for the Shareholders Group did not contest this limitation at the April 20, 2000 hearing.

The retention value method is the most common method for determining financial interest pursuant to the PSLRA, and seems to be the only method ever utilized in this district. I follow the lead of my colleagues and adopt the retention value method as the general rule for calculating largest financial interest. The "Lead Plaintiffs" Group cites several, non-published decisions by Judge Miller, Judge Kane, and Judge Nottingham that have employed this method of valuation. *See, e.g., In re New Era of Networks, Inc. Sec. Litig.,* Civil Action No. 99–WM–1274 (Colo.1999); *In re North Face Inc. Sec. Litig.,* Civil Action No. 99–WM–473 (Colo.1999); *In re Samsonite Corp. Sec. Litig.,* Civil Action No. 98–K–1878 (Colo.1998); *In re Boston Chicken Sec. Litig.,* Civil Action No. 97–WM–1308 (Colo.1997); *In re Einstein Bagel Sec. Litig.,* Civil Action No. 97–N–1614 (Colo. 1997).

Using the retention value calculations, the "Ribozyme Lead Plaintiffs" contend, and the Shareholders Group do not contest, that a comparison of the "Lead Plaintiffs" Group's two members with the Shareholders Group's four members, is as follows:

| "Ribozyme Lead Plaintiffs" Group | Estimated Losses | "Ribozyme Shareholders Group" | Estimated Losses |
|---|---|---|---|
| John Heisey | $67,300.00 | Mark Adler | $18,375.00 |
| Ron Ishibashi | $ 7,793.00 | Mitchell Gilbert | $20,418.75 |
| | | Barbara Brierre | $10,509.38 |
| | | Fasse/Jackson—jointly | $4,125.00 |
| Total | $75,093.75 | | $53,428.13 |

This chart employs the "retention" value used by both groups in their initial filings ($9.3125, the value of the stock at the end of the class period), in calculating estimated losses.

Thus, under this chosen method of valuation, the "Lead Plaintiffs" Group is the presumed "most adequate plaintiff" under the PSLRA. I follow the majority of judges in this district and adopt the majority rule applying the retention value method. Under this method, the parties do not contest that the "Lead Plaintiffs" Group holds the "largest financial interest."

### 2. The *Olsten* Factors

Both groups recognize another method of valuation for determining the largest financial interest under the PSLRA. Some courts have identified four factors in determining the largest interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period. *In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 295 (E.D.N.Y.1998) (citing *Lax,* 1997 WL 461036, at *5). While I employ the retention value method as the general rule for evaluating largest financial interest, I note that the *Olsten* factors fortify the viability of this general rule and uncover the reasons behind its application.

The Shareholders Group states that although such factors may be important where the class period is lengthy and the proposed lead plaintiffs have numerous "in and out" purchases and sales within the class period, such factors are not particularly helpful or relevant where, as in this case, the class period is quite short, purchases and sales activity relatively limited, and damages comparatively easy to compute. The "Lead Plaintiffs" Group contends, and the Shareholders Group do not contest, that they have the largest financial interest under this method:

| Four *Olsten* Factors: | "Ribozyme Lead Plaintiffs" | "Ribozyme Shareholders" |
| --- | --- | --- |
| (1) number of shares purchased during the class period | 8,500 Shares | 7,000 Shares |
| (2) number of net shares purchased during class period | 8,500 Shares | 5,000 Shares |
| (3) total net funds expended during the class period | $154,250.00 | $96,075.00 |
| (4) approximate losses suffered during the class period | $75,093.75 | $53,428.13 |

### 3. Damage Calculations under the PSLRA

■ The Ribozyme Shareholders Group, led by Hill & Robbins, makes the novel argument that to determine largest financial interest I should look to the recoverable damages as allowed by the PSLRA. When a plaintiff attempts to fix damages by referring to securities' market prices, the PSLRA limits damages as follows:

[T]he award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90–day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u–4(e)(1). Thus, when a plaintiff sells the stock prior to the expiration of the 90–day period, the plaintiff's damages are limited to the difference between his or her purchase price and the mean trading price during the period beginning immediately after dissemination of correcting information and ending on the date of the sale. 15 U.S.C. § 78u–4(e)(2). These damage calculations account for rising prices of stock and shareholders who hold on to their stock instead of selling low.

Under this method of valuation, the total damages available to the four named members of the Shareholders Group is $57,901.61. The Shareholders Group explains, somewhat suspiciously, that the reason their initial motion did not incorporate this value, and instead used the retention value method, is the difficulty in calculating the mean price for the 90–day period. However, it also seems likely that the Shareholders Group changed their method of valuation upon realizing their defeat under the traditional retention value method.

Because the members of the "Lead Plaintiffs" Group have concededly not sold their stock to date, their financial interest in this case would be based upon the overall mean price of the stock, $12.19 (the mean price of the stock over the statutory 90–day period). This places the "Lead Plaintiffs" Group's damages at $50,675.00; less than the Shareholders Group.

The "Lead Plaintiffs" Group argues against this novel valuation method and states that it is error to read the PSLRA's "90–day bounce back" provision regarding the calculation of damages into the lead plaintiff provision regarding the largest financial interest. I agree that the determination of financial interest does not equate to damages. Damages is a term of art and a technical matter to be established by experts. The lead plaintiff provision in the PSLRA does not use the term "damages" but instead, "largest financial interest." The Shareholders Group directs my attention to only one published case that tangentially considered PSLRA damages in determining the "largest financial interest." *See In re Party City Sec. Litig.*, 189 F.R.D. 91 (D.N.J.1999). I hold,

therefore, that "damages" under the PSLRA is not the proper test to determine largest financial interest.

## C. Rebutting the PSLRA's Presumption

 The PSLRA states that its presumption regarding lead plaintiffs can be rebutted upon proof that the most adequate plaintiffs are "subject to unique defenses that render such plaintiff[s] incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii). The Shareholders Group contends that if I find the "Lead Plaintiffs" Group to be the presumed most adequate plaintiffs, as I have, the "Lead Plaintiffs" Group is subject to unique defenses that render them inadequate to represent the class. I agree.

At the March 22, 2000 scheduling hearing, counsel for the defense stated that they reserved the right to challenge the adequacy of any potential lead plaintiffs at an appropriate time. Defense counsel stated, "certainly there's been a suggestion that possibly some of these plaintiffs were—or proposed plaintiffs have still held their stock, that they haven't sold it yet. If that were the case, we would argue that they have no damages, that they have no claim, and that they are certainly not suitable to be a class representative in a case that alleges damages." (March 22, 2000 Trans. at p. 6). At the April 20, 2000 hearing on this matter, counsel for the "Lead Plaintiffs" Group conceded that the two members of its group have not yet sold their Ribozyme stock. Today, Ribozyme's stock value has risen to a level exceeding even the elevated price prevailing during the class period. Therefore, the damages suffered by these members are called into question, subjecting the proposed plaintiffs to "unique defenses" potentially rendering such plaintiffs incapable of adequately representing the class. I conclude that the presumption of most adequate plaintiffs is rebutted by the unique circumstances of this case. Therefore, the Shareholders Group is appointed lead plaintiffs.

### III. Selection of Lead Counsel

Pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(v), the persons appointed lead plaintiffs shall,

subject to Court approval, select and retain counsel to represent the class they seek to represent. As noted above, the selected class counsel is more than adequate to serve these needs. Accordingly, I ORDER that:

(1) The "Ribozyme Shareholders Group's" Motion for Appointment of Lead Plaintiff and Approval of Lead Counsel is GRANTED. The Lead Plaintiffs, therefore, are Mark Adler, Mitchell Gilbert, Barbara Brierre, and David Fasse/Jaqueline Jackson (jointly). Lead Counsel is Hill & Robbins, Harold B. Obstfeld, and Beatie and Osborn; and

(2) The "Ribozyme Lead Plaintiffs'" Motion for Appointment of Lead Plaintiff and Lead Counsel is accordingly DENIED.